No. 99-195

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 47

STATE OF MONTANA,

Plaintiff and Respondent,

v.

MERLIN LaDUE,

Defendant and Appellant.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable John W. Whelan, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender Office, Helena, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Pamela P. Collins, Assistant Montana Attorney General, Helena, Montana; Robert McCarthy, Silver Bow County Attorney, Brad Newman and Samm Cox, Deputy Silver Bow County Attorneys, Butte, Montana

Submitted on Briefs: April 27, 2000
Decided: March 20, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Merlin LaDue (LaDue) appeals from an order entered by Montana's Second Judicial District Court, Silver Bow County, denying his request to call additional witnesses at trial for impeachment purposes. LaDue, charged with attempted deliberate homicide, was found guilty of aggravated assault and now appeals. We affirm the District Court's ruling.

¶2 The issues on appeal are:

¶3 1. Whether the District Court abused its discretion when it denied LaDue's motion to call additional witnesses after trial had begun.

¶4 2. Whether LaDue's constitutional right to present a defense was violated when the District Court denied his motion to call additional witnesses.

## BACKGROUND

¶5 LaDue, Owen Ah-Mu and Dale Abad had been drinking beer for a number of hours at LaDue's home in Butte, Montana. They had purchased seven cases of beer for consumption that day, sharing some of it with acquaintances. After Ah-Mu agreed to pay LaDue's girlfriend, Carolyn Jacquez, $2 for gas, she drove them to the apartment of Alipati Taufagu and Rose Lakel. Taufagu and Ah-Mu had been raised together, and considered themselves brothers. Ah-Mu immediately proceeded to enter the apartment building without tendering the agreed-upon $2. Alipati observed that LaDue and Abad were engaged in an altercation, and called it to Ah-Mu's attention. LaDue was attempting to collect the $2. Ah-Mu returned to the scene and intervened in defense of Abad, who he claimed was his "best friend."

¶6 The specific details contained in the testimony of the witnesses differ slightly at this point. No witness claims that Ah-Mu either possessed or brandished a weapon of any kind. LaDue was observed by several witnesses to have brandished his knife early in the confrontation, but put it back in his pocket, only to retrieve it a short time later and strike Ah-Mu in the chest and shoulder area, resulting in life-threatening puncture wounds to Ah-

Mu. LaDue did not dispute these facts, but claimed he did so in self-defense. Ah-Mu is approximately 6 feet 2 inches tall and weighed around 250 pounds, while LaDue is approximately 5 feet 10 inches and weighed around 160 pounds.

¶7 LaDue hurried from the scene with Jacquez in her car, throwing the knife out the window, and told Jacquez that he thought he had killed Ah-Mu. They traveled to LaDue's residence, where LaDue proceeded to wash his clothing and shower. When police arrived, Jacquez told them LaDue had already left, but he was apprehended trying to escape through a basement window.

¶8 LaDue was charged by information with the offense of attempted deliberate homicide, a felony in violation of §§ 45-5-102 (1)(a) and 45-4-103 (1), MCA, and pled not guilty. Pursuant to a plea agreement, the charges were reduced by an amended information to aggravated assault, to which LaDue pled guilty contingent upon his acceptance to boot camp at the Montana State Prison (MSP). MSP officials denied his application to boot camp, and LaDue withdrew his guilty plea to the lesser charge, and was recharged by amended information with attempted deliberate homicide, and again pled not guilty.

¶9 There was unquestionably some measure of physical contact between the two men. Different persons testified that Ah-Mu made a statement to the effect, "what about your knife, bitch?" to LaDue. Debbie Dobb, a nurse and assistant manager of the apartment complex, who observed much of the sequence of events from her apartment before and after calling the police, could not hear the verbal confrontation between LaDue and Ah-Mu. She testified at trial that at one point one man had the other against a fence, and when she returned from calling police their respective positions had switched. She also testified that while LaDue was hitting or swinging at Ah-Mu, she did not see Ah-Mu hit or swing at LaDue. LaDue attempted to elicit contradictions in Dobb's oral testimony versus her statement to police shortly after the incident. At trial, Dobb stated that Ah-Mu had his hands "around LaDue's shoulders," while in her statement to police two days following the stabbing she stated that Ah-Mu was talking to LaDue with a finger in his face.

¶10 Regina Tracy testified following Dobb's testimony. Tracy stated she did not see Ah-Mu raise his hands or strike at LaDue. On cross-examination, LaDue attempted to point out an inconsistency in Tracy's statement at trial versus her statement to police immediately following the altercation, where she had stated that Ah-Mu was pointing in LaDue's face. She deferred to her earlier statement to police, saying at trial that she simply couldn't remember that particular fact.

¶11 Witness Michael Moore, a resident of the complex, observed that Ah-Mu was backing LaDue down the sidewalk. He did not see Ah-Mu strike or push LaDue, though one hand was in front of him, but that in his opinion Ah-Mu's actions were aggressive. He then saw LaDue "hitting like a girl," striking Ah-Mu twice, but he didn't see anything in LaDue's hand.

¶12 Following Dobb's testimony, but prior to Tracy's testimony, a paralegal for LaDue's defense counsel overheard Dobb and Tracy discussing the case in the women's restroom during a break in the trial. Immediately after the break LaDue moved to add his paralegal to the witness list, along with Carolyn Skinner, the mother of Carolyn Jacquez, who was the girlfriend of LaDue and the mother of his child. LaDue asserted that Dobb and Tracy were essentially coordinating their testimony to his disadvantage, and that their testimony at trial differed substantially from their earlier statements to police. While LaDue made no attempt to recall Dobb as a witness to inquire about the alleged verbal exchange with Tracy, LaDue did pose questions regarding the restroom conversation to Tracy in front of the jury. The court addressed LaDue's request outside the presence of the jury. The State objected to the testimony of the paralegal, arguing that as an agent of LaDue's counsel, neither his counsel nor his counsel's agent could testify as a fact witness. The State further objected to Skinner testifying, as she had been present in the courtroom during the entire trial, in contrast to all other witnesses, who had been excluded from the courtroom at LaDue's request. Finally, the State argued that any error that may have resulted from the exclusion of the two proposed witnesses was harmless. The court denied LaDue's request to add the additional witnesses, stating that Tracy's and Dobb's testimony was not substantially different from the statements given police investigators shortly following the stabbing.

¶13 LaDue was found not guilty of attempted deliberate homicide, but guilty of the lesser included offense of aggravated assault. He was sentenced to 20 years at MSP, with an additional 5 years for use of a dangerous weapon. LaDue appeals.

## ISSUE 1

¶14 Whether the District Court abused its discretion when it denied LaDue's motion to call additional witnesses after trial had begun.

¶15 In *State v. Gollehon* (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263, we stated:

The standard of review for evidentiary rulings is whether the district court abused its discretion. The court has broad discretion to determine whether or not evidence is relevant and admissible, and absent a showing of an abuse of discretion, the trial court's determination will not be overturned.

In *Gollehon* we concluded that the probative value of 20 graphic photos of five murder victims outweighed the danger of unfair prejudice, and did not arouse jurors' passions any more than other evidence of Gollehon's conduct, and that the decision of the trial court to allow the photos into evidence was not an abuse of the court's discretion.

¶16 In the case *sub judice*, we are in essence asked by LaDue to find that the evidence he wished to offer through the two additional witnesses was probative in some way. The record supports the District Court's finding that the testimony of the two additional witnesses proposed by him was not probative. The differences in their statements to police and the testimony offered by both witnesses at trial did not result in two substantially different versions of events, one that implicated LaDue, and one that exonerated him. As a result, LaDue's contention that Dobb's trial testimony was more prejudicial to him than was her written statement to police is not meritorious.

¶17 Because their independent statements to police shortly after the stabbing are not notably inconsistent with their oral testimony at trial, LaDue necessarily infers that they must have therefore "fixed" their testimony immediately after the incident.

¶18 Nothing in the record supports such an inference; no witness states that they saw Tracy and Dobb engaged in private or public discussion about fixing their testimony to LaDue's disadvantage, and the investigating officers make no such reference, nor does LaDue offer any information to support such a conclusion. In fact, the record shows the investigating officer testified that he interviewed Dobb and Tracy separately at their respective places of employment, with no other persons in attendance, and that these conversations were recorded. With regard to both Tracy and Dobb, their statements to police shortly after the stabbing, compared to the testimony offered at trial, are quite similar. Not only was their testimony internally consistent, their testimony was consistent with the testimony of other witnesses who are not the subject of controversy here.

¶19 Furthermore, LaDue offers not even the most rudimentary discussion regarding a motive for Dobb and Tracy to "fix" their testimony to his disadvantage. Nor can this Court discern any nefarious intent from the record. LaDue's statement that "impeachment

evidence which shows the state's (sic) witness has a motive is compelling" is hardly compelling given his failure to suggest such a motive let alone support one.

¶20 LaDue concludes his discussion of this issue with a fatally flawed assumption, and equally flawed conclusion. He asserts that the testimony of witnesses who "stick to their story" is by definition always false. This is no more accurate than saying that the testimony of witnesses who stick to their story is by definition always true. While LaDue failed to recall Dobb to the stand to inquire about such a motive or otherwise cross examine Dobb about this and other relevant matters, LaDue did question Tracy in front of the judge and jury after the conversation in the restroom. Neither the judge nor the jury were persuaded by LaDue's efforts to impeach Tracy, despite the opportunity to view firsthand the witness and her credibility. The testimony offered by Dobb and Tracy was not inconsistent with the statements given by them shortly after the stabbing to police, and was not inconsistent with the testimony of other eyewitnesses. LaDue has not shown good cause to add the two witnesses after commencement of the trial. The District Court did not abuse its discretion when it refused to allow the two additional witnesses to testify.

¶21 The court in its ruling stated:

> [T]he information was furnished to Counsel prior to *these witnesses* testifying and he interrogated the *witnesses* concerning whether or not *they* discussed *their* testimony with another witness out in the hall, which *they* admitted *they* had, and that *their* testimony hadn't varied from the written *statements* that *they* had given earlier. . ..(Emphasis added).

¶22 While the record shows it is factually incorrect that LaDue knew of the restroom incident prior to Dobb's testimony, again he made no effort to recall Dobb to the stand to try to impeach her, and he made no effort to correct the court. It is correct, however, that one witness' testimony, Tracy's, occurred immediately after the restroom conversation and that LaDue was able to question Tracy about the incident in front of the jury. She willingly admitted the conversation took place, but adamantly denied that she and Dobb had conspired regarding their testimony.

¶23 We will not put a district court in error for an action to which the appealing party acquiesced or actively participated. *State v. Harris*, 1999 MT 115, ¶ 32, 294 Mont. 397, ¶ 32, 983 P.2d 881, ¶ 32. Acquiescence in error takes away the right of objecting to it. Section 1-3-207, MCA. Here, given the court's exclusion of the two additional witnesses

sought by LaDue, he could have sought to recall Dobb in an attempt to impeach her, but made no effort to do so. Moreover, he failed to correct the statement of the court wherein the court appeared to assert that both Tracy and Dobb had been subject to impeachment regarding the restroom conversation, when only Tracy had been subject to questioning about the matter. Here, too, we will not place the District Court in error for LaDue's failure to recall a witness and subsequent acquiescence to the court's ruling.

¶24 In conclusion, the court properly inquired of the nature of the testimony to be offered by the two proposed witnesses and the circumstances surrounding the matter in controversy. The court therefore had sufficient information to make its ruling denying LaDue's request for them to appear before the court. The District Court's ruling was not erroneous, and the court did not abuse its discretion when it denied LaDue's request to call two additional witnesses at trial.

Issue 2

¶25 Whether LaDue's constitutional right to present a defense was violated when the District Court denied his motion to call additional witnesses.

¶26 Section 46-20-104, MCA, states in pertinent part:

> (2) Upon appeal from a judgment, the court may review the verdict or decision *and any alleged error objected to* which involves the merits or necessarily affects the judgment. *Failure to make a timely objection during trial constitutes a waiver of the objection* except as provided in 46-20-701(2). (Emphasis added.)

¶27 Section 46-20-701, MCA, states in pertinent part:

> (1) Whenever the record on appeal contains any order, ruling or proceeding of the trial court against the convicted person affecting the convicted person's substantial rights on the appeal of the cause, *together with any required objection of the convicted person*, the supreme court on that appeal shall consider the orders, rulings, or proceedings *and the objections thereto* and shall reverse or affirm the cause on the appeal according to the substantial rights of the respective parties, as shown upon the record. A cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial.

(2) Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. *A claim alleging an error affecting jurisdictional or constitutional rights may not be noticed on appeal if the alleged error was not objected to as provided in 46-20-104, unless the convicted person establishes that the error was prejudicial as to the convicted person's guilt or punishment and that*:

(a) the right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application;

(b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the convicted person or the convicted person's attorney that prevented the claim from being raised and disposed of; or

(c) material and controlling facts upon which the claim is predicated were not known to the convicted person or the convicted person's attorney and could not have been ascertained by the exercise of reasonable diligence. (Emphasis added.)

¶28 These statutes make clear that an objection concerning jurisdictional or constitutional matters must be raised before the trial court, unless specific exceptions apply under § 46-20-701(2), MCA, and if the objection is not made it will not be heard on appeal. The exceptions are not applicable in the instant case. The record unequivocally shows that LaDue did not properly object to the court's ruling excluding the two proposed witnesses. LaDue's response to the court's ruling through counsel was simply, "Thank you, Your Honor," and counsel proceeded to immediately call LaDue to the stand. The court had adjourned for the lunch hour to consider LaDue's request to add the two witnesses. Not only did the court have this period of time to consider LaDue's request, LaDue had this same period of time to frame his arguments and concerns and anticipate the implications of the court's ruling either way, and to formulate any possible objections in an unpressured environment.

¶29 In addition to requiring a timely objection, we have held that the objection must specify what authority, rule, statute or constitutional provision might be violated by the court's decision in order to preserve the issue for appeal; the objector has an obligation to make the basis for the objection clear to the court so that the district court has an opportunity to correct itself. *State v. Huerta* (1997), 285 Mont. 245, 261, 947 P.2d 483, 493.

¶30 LaDue did not raise at trial the constitutional issue that he raises on appeal, and has therefore failed to preserve the matter for our review. As he did not raise the issue at trial, he has waived his right to appeal this issue.

¶31 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART