No. 00-010

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 292

STATE OF MONTANA,

Plaintiff and Respondent,

v.

FLOYD TAPSON,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright (argued), Appellate Defender, Helena, Montana

For Respondent:

Mike McGrath, Montana Attorney General, Jim Wheelis (argued), Assistant Montana Attorney General, Helena, Montana; Dennis Paxinos, Yellowstone County Attorney, Billings, Montana

Argued: September 10, 2001

Submitted: September 18, 2001

Decided: December 20, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Floyd Tapson was convicted by a jury in the Thirteenth Judicial District Court, Yellowstone County, of attempted deliberate homicide and sentenced to life in prison. He appeals his judgment and conviction. We reverse and remand for further proceedings consistent with this opinion.

¶2 Tapson raises two issues on appeal which we have restated for clarity as follows:

¶3 1. Whether defense counsel rendered deficient performance during *voir dire* for not questioning or challenging two prospective jurors whose daughters had been violently raped and whether Tapson was prejudiced because these prospective jurors served on the final jury panel.

¶4 2. Whether the District Court committed reversible error by entering the jury room alone, without counsel or Tapson present, and without a waiver by Tapson of his constitutional right to be present.

¶5 Because we conclude that Issue 2 is dispositive, we do not address Issue 1.

### Factual and Procedural Background

¶6 On October 14, 1998, the State charged Tapson with three felony counts: sexual intercourse without consent, in violation of § 45-5-503, MCA; aggravated kidnaping, in

violation of § 45-5-303(1)(c), MCA; and attempted deliberate homicide, in violation of §§ 45-4-103 and 45-5-102, MCA. The charges stemmed from an incident that occurred on October 8, 1998, involving Josephine Red Star, a developmentally disabled woman.

¶7 Red Star alleged that Tapson duped her into coming to his house where he threatened her with a gun, handcuffed her, and locked her in his basement for seven or eight hours. Red Star knew Tapson because he worked at the group home where her former boyfriend lived. Red Star further alleged that when Tapson finally released her from the basement, he took her to his bedroom where he sexually assaulted her. He then drove her to a secluded area outside of town where he shot her twice--striking her once in the cheek and once in the hand--before she managed to get away and run to a neighboring house for help.

¶8 When law enforcement officers questioned Tapson, he told them that he had not seen Red Star since late August and that he had been at work when the incident allegedly occurred. He later changed his story and alleged that Red Star had arrived at his house on her own, that they ate pizza and drank beer while watching movies, and that they had consensual sex. He also stated that, afterwards, they went target shooting at Red Star's request and that she was shot either by accident or that she shot herself.

¶9 The case proceeded to trial on March 26, 1999. Since the case had received considerable pre-trial publicity, the State and defense counsel agreed to an extended jury selection process including individual *voir dire*. On the second day of *voir dire*, several prospective jurors revealed that they had either close friends or family members who had been victims of crimes similar to those charged against Tapson. One prospective juror had a friend that was kidnaped, raped and murdered. Two other prospective jurors revealed that they each had a daughter who was the victim of a violent rape. Defense counsel did not challenge these prospective jurors for cause, nor did he use any peremptory challenges to remove these individuals. Both of the prospective jurors whose daughters were raped ended up serving on the final jury panel.

¶10 On April 8, 1999, the second full day of jury deliberations, the District Court met with counsel on the record to notify them that the jury had a verdict on one of the three counts but was unable to reach a verdict on the other two counts. The court recessed until Tapson could be present. Neither the court nor the parties knew which charge the jury had decided or how it had decided that charge.

¶11 Once Tapson was present, the State suggested substituting the existing verdict form that listed all three charges, with six verdict forms--one "guilty" form and one "not guilty" form for each of the three charges. The State maintained that substituting verdict forms would avoid the problem of the jury switching its current verdict on the one charge for some sort of last minute compromise. The State also suggested that the Judge take the forms into the jury room rather than handling the matter in open court. Since defense counsel voiced no opposition to these suggestions, the Judge took the forms into the jury room. Neither counsel nor Tapson were present. The Judge did not return to the courtroom until eleven minutes later. There was no record of whether the Judge spent the entire eleven minutes with the jury or only a portion of that time. Nor was any record made of what the Judge told the jury, whether the jury had any questions, or whether the Judge gave any responses.

¶12 The jury returned a verdict of "guilty" on the charge of attempted deliberate homicide. The jury foreperson stated that the jury was "unanimous in the opinion that we could not reach a verdict in the others." The court then dismissed the jury and set a time for sentencing. On August 10, 1999, the court sentenced Tapson to life imprisonment. Tapson appeals his conviction and sentence.

## Discussion

¶13 *Whether the District Court committed reversible error by entering the jury room alone, without counsel or Tapson present, and without a waiver by Tapson of his constitutional right to be present.*

¶14 The federal constitutional right to be present at all criminal proceedings is one of the most basic rights contained in the Confrontation Clause of the Sixth Amendment. *Illinois v. Allen* (1970), 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353. "The defendant's right to be present at all proceedings . . . which may take his life or liberty is designed to safeguard the public's interest in a fair and orderly judicial system." *Sturgis v. Goldsmith* (9th Cir. 1986), 796 F.2d 1103, 1109.

¶15 In Montana, the right of a criminal defendant to be present at his trial is expressly guaranteed by the Montana Constitution: "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel. . . ." Art. II, Sec. 24, Mont. Const. Since the right to appear and defend in person is found within Montana's Declaration of Rights, it is a fundamental right. A right is "fundamental" under Montana's

Constitution if the right is either found in the Declaration of Rights or is a right "without which other constitutionally guaranteed rights would have little meaning." *Butte Community Union v. Lewis* (1986), 219 Mont. 426, 430, 712 P.2d 1309, 1311.

¶16 This Court recognized as early as 1922, when interpreting an identical provision of the 1889 Montana Constitution, that "the defendant must be present throughout the *entire* trial." *State v. Reed* (1922), 65 Mont. 51, 56, 210 P. 756, 757 (emphasis added). The Court stated in *Reed*:

> No principle of law, relating to criminal procedure, is better settled than that, in felony cases, nothing should be done in the absence of the prisoner. It is his unquestioned right "to be confronted with his accusers and witnesses." He has the legal right to be present when the jury are hearing his case, and at all times during the proceeding of the trial, when anything is done which in any manner affects his right. . . .

*Reed, 65 Mont. 51, 58, 210 P. 756, 758 (citation omitted).*

¶17 There are no other reported cases in Montana where a judge entered the jury room alone and instructed the jury off the record. While we do not believe that the Judge in this case intended to influence the jury in any way, other jurisdictions have made it clear that to insure that jury deliberations remain free of any extraneous influences, the jury room door must remain closed to judges. *See United States v. Smith* (7th Cir. 1994), 31 F.3d 469, 471 ("[T]he unusual practice of a judge entering the jury room to speak privately with jurors is almost certain to run afoul of a defendant's right to be present during trial proceedings."); *Commonwealth v. Patry* (Mass. App. Ct. 2000), 722 N.E.2d 979, 983 ("[J]udges should not enter jury rooms at any time to conduct the court's business, even with the parties' consent or at the invitation of the jury."); *Graves v. State* (Ala. Crim. App. 1979), 377 So.2d 1129, 1130 ("No communication, whatever, should take place between the judge and the jury after the cause has been submitted to them, unless in open court with all the parties and their attorneys present. The sanctity of the jury room must remain inviolate, and it is the trial judge's responsibility to maintain that sanctity. Anything less is an abdication of his judicial responsibility."); *Graham v. State* (Okla. Crim. App. 1942), 121 P.2d 308, 311 ("To permit various persons, under one pretext or another, to be with the jury in its deliberations is to open the door to grave abuse and to strike directly at the heart of the system."); *State v. Wroth* (Wash. 1896), 47 P. 106, 107, *overruled in part by State v. Caliguri* (Wash. 1983), 664 P.2d 466 ("In the discharge of his official duty, the

place for the judge is on the bench. As to him, the law has closed the portals of the jury room, and he may not enter.")

¶18 In *United States v. United States Gypsum Co.* (1978), 438 U.S. 422, 460, 98 S.Ct. 2864, 2885, 57 L.Ed.2d 854, wherein counsel agreed to let the judge meet privately with one juror, the United States Supreme Court explained the danger inherent with *ex parte* meetings with the jury during deliberations:

> Any ex parte meeting or communication between the judge and the foreman of a deliberating jury is pregnant with possibilities for error. This record amply demonstrates that even an experienced trial judge cannot be certain to avoid all the pitfalls inherent in such an enterprise. First, it is difficult to contain, much less to anticipate, the direction the conversation will take at such a meeting. Unexpected questions or comments can generate unintended and misleading impressions of the judge's subjective personal views which have no place in his instruction to the jury-- all the more so when counsel are not present to challenge the statements.

In *Gypsum,* the Supreme Court held that this unrecorded meeting between judge and juror warranted reversal because it was impossible to gauge how the meeting affected the jury's verdict. *Gypsum*, 438 U.S. at 462, 98 S.Ct. at 2886.

¶19 The State contends that *Gypsum* does not apply here because the jury in *Gypsum* was still deliberating and the jury in the case *sub judice* was not. The State, however, is mistaken. No one actually knew the status of the jury's deliberations in this case. The Judge noted prior to his decision to enter the jury room that "there appears to be a hung jury on two counts and a verdict on one . . . ." Likewise, the prosecutor commented that "nobody here knows which decision they made."

¶20 Tapson argues that there is no discernable difference between the position of the jury in his case and that of the jury in *Gypsum* as both juries were deadlocked when the judge entered the jury room. Both cases involved "active deliberations" because the jury foreman had not yet signed the verdict and the verdict had not been returned to the judge and pronounced in open court. *See* § 46-16-603(1), MCA. Furthermore, a jury note indicating some sort of verdict does not guarantee a unanimous verdict. Tapson still had the right to poll the jurors in open court about their present state of mind with regard to the verdict. *State v. Pyatt*, 2000 MT 136, ¶¶ 16-17, 300 Mont. 25, ¶¶ 16-17, 1 P.3d 953, ¶¶ 16-17. Moreover, the jury could have been directed to further deliberate or could have been

discharged because of lack of unanimity on all counts. *See* § 46-16-604, MCA.

¶21 In addition to a criminal defendant's fundamental right to be present at all critical stages of trial, a criminal defendant has the fundamental right to a public trial. Art. II, Sec. 24, Mont.Const. A public trial ensures that the defendant has the means for proving procedural facts necessary to protect his or her rights and to see that the defendant is not "unjustly condemned." *State v. Keeler* (1916), 52 Mont. 205, 218, 156 P. 1080, 1083.

¶22 The right to a public trial extends to the entire trial including the judge's instructions to the jury. *Commonwealth v. Patry* (Mass. App. Ct. 2000), 722 N.E.2d 979, 982-83. In *Patry*, the judge met with the jurors to give supplemental instructions three times in the jury room because the courtroom was being used for other purposes. Both defense counsel and the prosecutor agreed to this procedure and accompanied the judge into the jury room along with the court reporter. On appeal, the court reversed Patry's conviction holding that, even with the presence of counsel and a court reporter, giving supplemental instructions to the jury in the jury room violated the defendant's Sixth Amendment right to a public trial. *Patry*, 722 N.E.2d at 982-83. Unlike *Patry*, Tapson's counsel was not present in the jury room with the judge and no court reporter attended the meeting to record what occurred.

¶23 The State contends that defense counsel waived Tapson's right to be present and that Tapson is bound by the actions of his attorney. The State cites *State v. LaDue*, 2001 MT 47, ¶ 28, 304 Mont. 288, ¶ 28, 20 P.3d 775, ¶ 28, for the idea that "an objection concerning jurisdictional or constitutional matters must be raised before the trial court, unless specific exceptions apply under § 46-20-701(2), MCA, and if the objection is not made it will not be heard on appeal."

¶24 Since *Gypsum*, the right to be present at all federal criminal proceedings has been codified at Rule 43(a), Fed.R.Crim.P. While this right can be waived, the waiver can only occur by failing to appear at trial or through an express personal waiver by the defendant. *United States v. Felix-Rodriguez* (9th Cir. 1994), 22 F.3d 964, 967 (citations omitted).

¶ 25 "Waiver is defined as the voluntary abandonment of a *known* right." *State v. Musgrove* (1978), 178 Mont. 162, 170, 582 P.2d 1246, 1251 (emphasis added). *See also Welsh v. Great Falls* (1984), 212 Mont. 403, 411, 690 P.2d 406, 411. This Court will not engage in presumptions of waiver; any waiver of one's constitutional rights must be made specifically, voluntarily, and knowingly. *Park v. Sixth Jud. Dist. Court*, 1998 MT 164, ¶ 36, 289 Mont. 367, ¶ 36, 961 P.2d 1267, ¶ 36 (citing *Johnson v. Zerbst* (1938), 304 U.S.

458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461; *State v. Lucero* (1968), 151 Mont. 531, 538, 445 P.2d 731, 735).

¶26 Moreover, before a defendant can waive a fundamental right, "such waiver, to be recognized by the courts, must be informed and intelligent for there can be no waiver by one who does not know his rights or what he is waiving." *State v. Allison* (1944), 116 Mont. 352, 360, 153 P.2d 141, 145. In holding that the defendant in *Allison* had not expressly waived his right to remain silent, this Court stated:

> The rights guaranteed by the Constitution apply to all alike--the well-informed who know their rights as well as to the ignorant who never heard of such rights. There stands the right like the rock of Gibraltar and it so remains protecting the life and liberty of every person whether the particular person knows about it or not.

*Allison, 116 Mont. at 360, 153 P.2d at 144-45.*

¶27 No one informed Tapson that the Judge's intrusion into the jury room implicated two of Tapson's fundamental rights--the right to personally appear at all criminal proceedings and the right to a public trial. While Tapson's counsel professed to waive these rights, there is nothing in the record to indicate that Tapson himself was apprised of these rights, nor is there anything in the record indicating that he personally made a knowing, intelligent and voluntary waiver of these rights. On the contrary, the judge explained that he was going to personally enter the jury room with the new verdict forms and instruct the jury because it was the easiest way to handle this process. Tapson could not have been fully informed when the option to proceed in private or in open court was only presented as a matter of convenience.

¶28 Consequently, we hold that in the future, when there is some circumstance arguably making it necessary for the trial judge to enter the jury room while the jury is present, a trial court must, contemporaneously, explain to the defendant, on the record, the defendant's constitutional right to be present at all critical stages of the trial and the right to a public trial. If a defendant chooses to waive these rights, the court must obtain an on-the-record personal waiver by the defendant acknowledging that the defendant voluntarily, intelligently and knowingly waives these rights.

¶29 The State further argues that Tapson was not prejudiced when the Judge entered the jury room to exchange verdict forms. The State maintains that it is unreasonable to believe

that the Judge, in the space of a minute or so, "through some sort of subtle, unspoken communication, changed the minds of twelve people who had reached a verdict on one count after two days of deliberation and said they could not decide the others." Moreover, the State contends that Tapson cannot show that the Judge's appearance in the jury room had any effect on the verdict or the undecided charges.

¶30 Tapson points out, on the other hand, that in the space of a minute or so, the jury could have asked questions about a lesser charge of failure to render aid as opposed to attempted deliberate homicide; the jury could have inquired into which charge carries the maximum allowable punishment; and the jury could have forged a compromise on the Judge's response. The deficit in the record makes it impossible to say beyond a reasonable doubt that there was no prejudice to Tapson.

¶31 Although the most important factor here is the actual intrusion of the Judge into the jury room during deliberations, the lack of a record "makes it impossible to say that, beyond a reasonable doubt, there was no prejudice to the defendant, and therefore harmless error." *State v. Hilliard* (Ariz. Ct. App. 1982), 651 P.2d 892, 897. Therefore, the court in *Hilliard* adopted the rule that "it is reversible error for the judge to enter the jury room after the jury has retired to deliberate, regardless of the intent or content of any ensuing communication, and regardless of the prejudice, or lack thereof, resulting." *Hilliard*, 651 P.2d at 898.

¶32 While we agree with the underlying premise of *Hilliard* that a judge should avoid entering the jury room under almost any circumstance, we also determine that a defendant can, with proper advice, waive his or her constitutional right to be present at all critical stages of the trial and the right to a public trial. Hence, we now adopt the rule that absent a contemporaneous, personal, knowing, voluntary, intelligent and on-the-record waiver by the defendant,[1] if a judge enters the jury room while the jury is present and without counsel, the defendant, and the court reporter, reversal will be automatic.

¶33 Accordingly, we hold that the District Court committed reversible error in this case by entering the jury room with the jury present but without counsel, Tapson and the court reporter and without a contemporaneous, personal, knowing, voluntary, intelligent and on-the-record waiver by Tapson of his constitutional rights to a public trial and to be present at all critical stages of the trial.

¶34 That said, the dissent has raised several contentions that deserve response. First, the

dissent takes issue with our reviewing Tapson's constitutional claim on appeal, arguing that he did not first raise that issue in the trial court. The dissent faults us for not following the precedent set forth in *LaDue* and our statutory law at §§ 46-20-104 and 701, MCA, that provide that a claim alleging an error affecting jurisdictional or constitutional rights may not be noticed on appeal if the alleged error was not objected to during trial.

¶35 While that is the general rule, § 46-20-701(2), MCA, requires the defendant to, among other things, establish that the claimed error was prejudicial. And that is the problem. Since, as we have already pointed out, no record was made of what the trial judge said to the jurors or what transpired in the eleven minutes that he was absent from the court room, there is no way for Tapson to prove prejudice. The record reflects that a recess was called "to advise the jury of how to proceed." Again, we are not implying misconduct on the part of the court. However, the fact remains that Tapson could not show what advice, if any, the Judge gave to the jurors and how that might have affected their deliberations or verdict; he could not show what questions, if any, the jurors might have asked and how those were answered; and neither he nor his counsel could gauge the subtleties of facial expression or body language of the jurors or the court that might have provided grounds for objection. We decline to hoist a criminal defendant on the horns of this sort of dilemma where two fundamental and highly protected constitutional rights are involved--i. e., requiring him to prove error prejudicially affecting his jurisdictional or constitutional rights where the only means to meet that burden--the court record--was not preserved by reason of the commission of the error itself.

¶36 Moreover, the State did not ground its argument on appeal on the premise that Tapson waived his right of appeal by failing to effectively object in the court below. Rather, the State vigorously argued the merits of Tapson's claim and only incidentally mentioned the threshold issue of whether Tapson had properly preserved the matter for our review. Indeed, the totality of the State's argument in this respect is contained in one-half of a paragraph out of a 39-page brief. We are, accordingly, disinclined to give this contention any more importance than the State apparently did.

¶37 Second, the dissent mistakenly relies on *United States v. Gagnon* (1985), 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486, for the idea that a defendant need not expressly waive his or her right to be present during critical stages of the trial and that a failure to assert that right at the time precludes this Court from reviewing the error on appeal. *Gagnon* did not involve a defendant's right to be personally present during a *critical* stage of the trial. In *Gagnon*, the trial judge held an in-camera hearing, attended by Gagnon's

counsel, to assess a juror's concern on observing Gagnon sketching portraits of the jury. The Supreme Court characterized the inquiry as a "minor occurrence" and held that Gagnon's constitutional rights had not been violated by his nonappearance at a *non-crucial* stage of the proceedings. *Gagnon*, 420 U.S. at 527, 105 S.Ct. at 1484-85.

¶38 Third, while it is true that defense counsel consented to allowing the Judge to enter the jury room and converse with the jurors off the record, that this situation occurred at all was to convenience the State because the prosecutor was worried that allowing the jurors to continue with their deliberations would jeopardize the verdict he thought they had already reached on one of the three counts. The prosecutor did not want the Judge to bring the jurors back into open court to receive the alternate verdict forms. Rather, the prosecutor wanted the Judge to give the jurors the forms without their having to leave the jury room. The record discloses the following colloquy:

> THE PROSECUTOR: It was not my intent to have the jury removed from the jury room. I thought maybe we would have them submit the verdict form signed back to you, whichever one it was, and then we would assemble them.
>
> THE COURT: Okay.
>
> THE PROSECUTOR: The point is, I think we want to make clear that the Allen instruction would only be germane or relevant to those counts that have been decided. It has nothing to do with the one they have already reached a verdict on.
>
> THE COURT: Right. Let them return a verdict and then --
>
> THE PROSECUTOR: "Go back and deliberate on your other two counts."
>
> THE COURT: Well, however we proceed, what we need to do first is have them return the verdict that they do have. They can do that on the form they have got. If we send them back, we could send them back with separate verdict forms on the other two.
>
> THE PROSECUTOR: I guess my whole point is, we didn't want them negotiating or determining or deciding on anything except the two counts they have.

Again, we believe that highly-protected, fundamental constitutional rights deserve more

safeguard than to be off-handedly waived as a matter of convenience to counsel.

¶39 Furthermore, contrary to the dissent's suggestion that the rule we set forth in this case would "potentially impose itself on each sidebar conference," our opinion here deals with a discrete error--i.e., the Judge entering the jury room while the jury is present, without the presence of the defendant, counsel and the court reporter, and without a contemporaneous, personal, knowing, voluntary and intelligent, on-the-record waiver by the defendant of his rights to be present at a critical stage of the trial and to a public trial. If this rule is to be expanded to cover other errors and other rights, as the dissent fears, then it will be on a case-by-case basis and only after briefing and argument.

¶40 Finally, we have not effectively overruled our decisions in *LaDue* and *State v. Harris*, 1999 Mont 115, 294 Mont. 397, 983 P.2d 881, as the dissent suggests. Rather, we have determined that the waiver rules in those two cases do not apply for the reasons explained above.

¶41 Reversed and remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ PATRICIA COTTER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

Justice Jim Rice dissenting.

¶42 I respectfully dissent.

¶43 Nine months ago, an unanimous panel of this Court decided *State v. LaDue*, 2001 MT 47, 304 Mont. 288, 20 P.3d 775, wherein the Defendant contended that his constitutional

trial rights were violated when the District Court denied his request to call additional witnesses in his defense. In addressing this constitutional issue, the Court acknowledged that the matter was governed by § 46-20-104, MCA, and § 46-20-701, MCA, which requires that "[a] claim alleging an error affecting jurisdictional or constitutional rights may not be noticed on appeal if the alleged error was not objected to . . ." and held as follows:

> These statutes make clear that an objection concerning jurisdictional or constitutional matters must be raised before the trial court . . . and if the objection is not made it will not be heard on appeal.
>
> . . . .
>
> In addition to requiring a timely objection, we have held that the objection must specify what authority, rule, statute or constitutional provision might be violated by the court's decision in order to preserve the issue for appeal; the objector has an obligation to make the basis for the objection clear to the court so that the district court has an opportunity to correct itself. *State v. Huerta* (1997), 285 Mont. 245, 261, 947 P.2d 483, 493.
>
> LaDue did not raise at trial the constitutional issue that he raises on appeal, and has therefore failed to preserve the matter for our review. As he did not raise the issue at trial, he has waived his right to appeal this issue.

*LaDue, ¶¶ 27-30. While the Court makes a passing reference to LaDue in ¶ 23, it fails to acknowledge the relevance of its holding to this matter. Although unstated by the Court, LaDue appears to have been overruled, and further, the statutes and holdings upon which it relied will no longer bar constitutional claims on appeal which were not first raised in the district court. The Court does not claim to review the issue here pursuant to the plain error doctrine. Thus, by issuing a decision which directly conflicts with LaDue and the statutes, the Court leaves the law in disarray.*

¶44 The policy behind the statutes is well founded, and consistent with federal policy. On similar grounds, the United States Supreme Court, in *United States v. Gagnon* (1985), 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed. 2d 486 (per curiam), held that a defendant's failure to object to his right to be present during all phases of the trial is a waiver of his right to appeal the issue.

¶45 More than failing to object, here the Defendant consented to the challenged procedure. It was the trial judge who wanted to bring the jury into the courtroom. After waiting for the Defendant to arrive so that he could be present for the in-chambers meeting, the judge discussed the procedure for providing new verdict forms to the jury. Excerpts from the transcript of the discussion are enlightening:

> THE COURT: *Why don't we take that verdict*, *then if we want to give them the dynamite instruction and send them back* with separate verdicts on the other two counts that wouldn't include the count that they returned a verdict on, that would-if we do it the way you first suggested, then we would have to bring them into the courtroom, give them these other three sets of verdicts, send them back and have them fill out one of those and bring them back. *This would just make less shuffling back and forth.*
>
> [THE STATE]: *It was not my intent to have the jury moved from the jury room*. I thought maybe we would have them submit the verdict form signed back to you, whichever one it was, and then we would assemble them.
>
> . . . .
>
> THE COURT: Does anybody have an objection if I do that, or *would you prefer that to be done on the record in the courtroom, in which case, we will do that, bring them in* and send back the verdict forms-
>
> [DEFENSE COUNSEL]: *We have no objection to your proposition.*
>
> [THE STATE]: State has no objection to the Court administering them personally to the jury.

(Emphasis added.) Clearly, the defense, with the Defendant personally in attendance, participated in the discussion regarding the proposed verdict form exchange, and then specifically consented to it. "We will not put a district court in error for an action in which the appealing party acquiesced or actively participated." *State v. Harris,* 1999 MT 115, ¶ 32, 294 Mont. 397, ¶ 32, 983 P.2d 881, ¶ 32. The rule of *Harris* is, apparently, no more.

¶46 The Court finds that the actions of the defense here do not constitute a valid waiver of

the Defendant's trial right because it was not "an on-the-record knowing, voluntary, and intelligent waiver" by a fully-advised defendant. ¶ 32.

¶47 In *Gagnon,* the United States Supreme Court rejected a claim that contact between a trial judge and juror, to which defense counsel had acquiesced, had not been waived by the defendant's failure to object. Although Rule 43, Federal Rules of Criminal Procedure, requires the presence of the defendant at all stages of trial, the Court held:

> We disagree with the Court of Appeals that failure to object is irrelevant to whether a defendant has voluntarily absented himself under Rule 43 from an *in camera* conference of which he is aware. **The district court need not get an express "on the record" waiver from the defendant for every trial conference which a defendant may have a right to attend.**

*Gagnon, 470 U.S. at 528 (emphasis added). The United States Supreme Court thus recognized the impracticality of requiring the defendant to be advised of each right through an awkward on-the-record procedure each time a trial right is encountered. While the Court herein does not impose such a waiver procedure on other constitutional trial rights, I fail to see why other, equally important rights, would not logically be incorporated by the Court's waiver rule under the rationale expressed here. In the flow of a criminal trial, the defendant's rights are to be protected by defense counsel. Rather than impose an unworkable waiver rule that may potentially impose itself on each sidebar conference, I would let counsel do their job. There are remedies if they fail to do so.*

¶48 I acknowledge the concern regarding judges appearing in jury rooms. However, finding that the Defendant waived his constitutional right to be present, and also failed to preserve the issue for appeal, I would affirm.

/S/ JIM RICE

1. As already noted at ¶ 28, for the defendant's waiver to be knowing, voluntary and intelligent, the waiver must be preceded by the trial court explaining to the defendant, on the record, his or her rights to be present at all critical stages of the trial and to a public trial.