No. 02-259

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 53

STATE OF MONTANA,

    Plaintiff and Respondent,

    v.

VICTOR VANN KENNEDY,

    Defendant and Appellant.


APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone, Cause No. DC-01-177
                The Honorable Diane G. Barz, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Kristina Guest (argued), Appellate Defender Office, Helena, Montana

        For Respondent:

            Hon. Mike McGrath, Montana Attorney General, Jim Wheelis (argued),
            Assistant Attorney General; Dennis Paxinos, Yellowstone County Attorney,
            Billings, Montana


                                    Argued and Submitted: October 15, 2003

                                    Decided:    March 5, 2004

Filed:



        _____
                            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Following a jury trial, Appellant Victor Vann Kennedy was convicted of sexual intercourse without consent in the Thirteenth Judicial District Court, Yellowstone County. During the trial, it was discovered that one of the jurors had a mid-trial conversation with a Billings police detective who was slated to be called as a State's witness. As a result, Kennedy moved for a mistrial. The District Court denied Kennedy's motion, and the trial proceeded. Kennedy appeals. We affirm the judgment of the District Court.

¶2 Kennedy raises two issues on appeal:

¶3 1. Did the District Court violate Kennedy's constitutional right to be present at the critical stages of his trial when it excluded him from its conversation with juror Mike Clark?

¶4 2. Did Mike Clark's conversation with Detective Helderop constitute juror misconduct?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5 On February 22, 2001, the State filed an information charging Kennedy with one count of sexual intercourse without consent, in violation of § 45-5-503, MCA (1999), one count of aggravated kidnapping by accountability, in violation of §§ 45-2-301 and 45-5-303, MCA (1999), and two counts of sexual intercourse without consent by accountability, in violation of §§ 45-2-301 and 45-5-503, MCA (1999). Kennedy pled not guilty to all four counts.

¶6     The case proceeded to jury trial on July 16, 2001. One of the witnesses slated to testify for the State was Detective Trevor Helderop from the Billings Police Department. As such, the prosecutor questioned the prospective jurors during *voir dire* about whether or not they were acquainted with Helderop. The relevant portion of the prosecutor's inquiry is as follows:

> Prosecutor: How about Detective Trevor Helderop with the Billings Police Department?
>
> . . .
>
> Prosecutor: Okay. Good morning.
>
> Prospective Juror: Hi.
>
> Prosecutor: What is your name, sir[?]
>
> Prospective Juror: Mike Clark.
>
> Prosecutor: Do you know - are you friends with Detective Helderop?
>
> Clark: Yes, he is my friend.
>
> Prosecutor: I think I knew that. Will you be able to sit and listen to his testimony? Are you comfortable with that?
>
> Clark: Yeah.
>
> Prosecutor: Will you be prone to give it any more weight because you know him?
>
> Clark: No.
>
> Prosecutor: All right.

Clark was ultimately selected as a member of the jury panel.

¶7    Before testimony commenced on the first day of trial, the District Court gave the jury

the following admonition:

> It is important as jurors and officers of the court [that] you obey the
> following instructions at any time you leave the jury box, whether it be for
> recesses of the court during the day, or when you leave the courtroom to go
> home at night.  First, done [sic] talk about this case among yourselves or
> with anyone else during the course of the trial. . . . You may only enter into
> discussion about this case with the other members of the jury after it is
> submitted to you for your decision.  All such discussion will take place in
> the jury room.
>
> Second, do not let any person talk about this case in your presence.  If
> anyone does talk about it, tell them you are a juror on the case.  If they
> want [sic] stop talking, report that to me as soon as you are able to do so. . .
> .
>
> Third, although it is normal human tendency to talk and visit with people,
> both at home and in public, **you may not during the time you serve on
> this jury talk with any of the parties or their attorneys or any
> witnesses.  By this I mean not only do not talk about the case, but do
> not talk at all, even to pass the time of day.  In no other way can the
> parties be assured of the fairness they are entitled to expect from you
> as jurors.**  [Emphasis added.]

The District Court repeated a similar admonition, warning the jurors not to discuss the case

amongst themselves or with anyone else, each time the court broke for a recess.

¶8    Before testimony began on July 18, 2001, the third day of trial, the District Court met

with counsel in chambers to discuss a situation involving one of the jurors.  The prosecutor

explained the situation as follows:

> We had information last night that Trevor Helderop has had communication
> with one of the jurors, Mr. Clark, Mike Clark . . . Here is how that
> communication began and what the substance was . . . Yesterday, Trevor
> Helderop called [victim/witness assistant Sandy Harris] to check in about
> when he was to testify and asked her, How is it going?  [Sandy's] response

4

to him was, It is going fine, with the exception . . . that there is one juror who won't look at [the victim] while she's testifying. Sandy said, I think that [that juror] is your friend. . . . That was the extent of their conversation.

Unbeknownst I think to any of us, Mr. Helderop's friendship with Mr. Clark is more significant than I think we knew, although Mr. Clark did disclose during jury selection he was friends with Mr. Helderop, apparently they are [the] best of friends and are in daily communication.

Mr. Clark contacted Mr. Helderop yesterday at noon, as it is their custom to talk everyday. When they were having the conversation, Mr. Helderop initiated the statement, I understand you won't look at the victim. [Clark] responded by saying, She has been through enough, she didn't need one more person staring at her.

Yesterday, late afternoon, after court was over . . . another officer . . . called Sandy Harris and said, I think Helderop has had contact with a juror. . . . Sandy Harris hung up and immediately reported that to us.

¶9 Defense counsel responded to this information by moving for both a mistrial and a dismissal with prejudice. The prosecutor requested that the District Court remove Clark from the jury and replace him with the alternate juror. The prosecutor further offered to exclude Helderop as a witness. Defense counsel objected to the prosecutor's suggestion, stating that because the other jurors were aware of Clark's friendship with Helderop, Clark's sudden removal could contaminate the rest of the jury panel. Defense counsel further reminded the District Court that the misconduct had been initiated by Helderop. After some discussion, the District Court excused counsel from chambers, stating that:

I need the statute [on juror replacement]. I need to look at that . . . I need to determine, first of all, from this Mike Clark, you know, his view of the situation. And if I - I'll do that in chambers on the record with [the court reporter] and advise you accordingly.

¶10 With the court reporter present, the District Court then met with Clark in chambers.

Neither Kennedy nor any member of counsel was present during this meeting. When questioned about his conversation with Helderop, Clark stated that he had misunderstood the District Court's admonition that the jurors were not to have contact with the witnesses. Clark further stated that while he and Helderop had discussed his lack of eye contact with the victim, they did not discuss any aspect of the case itself. Finally, Clark stated that he did not mention his conversation with Helderop to the other jurors. The District Court reacted by excusing Clark from jury service and warning him not to speak to the other members of the jury panel.

¶11 Following its meeting with Clark, the District Court again met with counsel in chambers. The prosecutor moved to replace Clark with the alternate juror. Defense counsel objected, and renewed his motion for a mistrial. The District Court denied defense counsel's motion and replaced Clark with the alternate juror. The District Court made no statement to the jury panel regarding Clark's removal.

¶12 The prosecution excluded Helderop as a witness and the trial proceeded to conclusion. On July 20, 2001, the jury found Kennedy guilty of sexual intercourse without consent. Kennedy was sentenced on February 13, 2002. He filed a timely appeal.

## STANDARD OF REVIEW

¶13 Whether a criminal defendant's right to be present at the critical stages of his or her trial has been violated is a question of constitutional law. Our review of questions of constitutional law is plenary. *Schmill v. Liberty Northwest Ins. Corp.*, 2003 MT 80, ¶ 9, 315 Mont. 51, ¶ 9, 67 P.3d 290, ¶ 9. We review a district court's conclusions of law to determine

whether its interpretation of the law is correct. *State v. Ray*, 2003 MT 171, ¶ 12, 316 Mont. 354, ¶ 12, 71 P.3d 1247, ¶ 12.

¶14 A district court's determination of whether to grant a motion for a mistrial must be based on whether the defendant has been denied a fair and impartial trial. *State v. Herrman*, 2003 MT 149, ¶ 36, 316 Mont. 198, ¶ 36, 70 P.3d 738, ¶ 36. This Court's standard of review of a grant or denial of a motion for a mistrial is whether the district court abused its discretion. *Herrman*, ¶ 36. Similarly, the decision of a district court as to the impartiality of a jury should not be set aside unless there is a clear abuse of discretion. *State v. McMahon* (1995), 271 Mont. 75, 78, 894 P.2d 313, 315.

## DISCUSSION

## ISSUE 1

¶15 Did the District Court violate Kennedy's constitutional right to be present at the critical stages of his trial when it excluded him from its conversation with juror Mike Clark?

¶16 The federal constitutional right to be present at all criminal proceedings is one of the most basic rights contained in the Confrontation Clause of the Sixth Amendment. *State v. Tapson*, 2001 MT 292, ¶ 14, 307 Mont. 428, ¶ 14, 41 P.3d 305, ¶ 14 (citing *Illinois v. Allen* (1970), 397 U. S. 337, 338, 90 S. Ct. 1057, 1058, 25 L. Ed. 2d 353). The right to be present stems in part from the fact that by his or her physical presence, a defendant can hear and see the proceedings, and can participate in the preservation of his or her rights. *Sturgis v. Goldsmith* (9th Cir. 1986), 796 F.2d 1103, 1108. However, the right also rests upon society's interest in due process. That is, a defendant's right to be present at all proceedings which

7

may take his or her life or liberty is designed to safeguard the public's interest in a fair and orderly judicial system. *Sturgis*, 796 F.2d at 1108-09.

¶17 In Montana, the right of a criminal defendant to be present at his or her trial is expressly guaranteed by Article II, Section 24, of the Montana Constitution, which provides, in pertinent part: "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel." Moreover, because the right to appear and defend is found within Montana's Declaration of Rights, it is a fundamental right under the Montana Constitution. *Tapson*, ¶ 15; *State v. Bird*, 2002 MT 2, ¶ 25, 308 Mont. 75, ¶ 25, 43 P.3d 266, ¶ 25.

¶18 In 1922[1], this Court interpreted the right to appear and defend to mean that: "[T]he defendant must be present throughout **the entire trial**." *State v. Reed* (1922), 65 Mont. 51, 56, 210 P. 756, 757 (emphasis added). The *Reed* Court further noted that:

> No principle of law, relating to criminal procedure, is better settled than that, in felony cases, nothing should be done in the absence of the prisoner. It is his unquestioned right 'to be confronted with his accusers and witnesses.' He has the legal right to be present when the jury are hearing his case, and at all times during the proceeding of the trial, when anything is done which in any manner affects his right . . . .

*Reed*, 65 Mont. at 58, 210 P. at 758 (citation omitted).

¶19 In this case, the District Court questioned juror Mike Clark after learning that Clark had a telephone conversation with witness Trevor Helderop on the second day of trial. Neither Kennedy nor his counsel were present during the District Court's questioning of

---

[1]The constitutional provision interpreted by the *Reed* Court is identical to Article II, Section 24, of the current Montana Constitution.

Clark. As we noted above, a defendant has a constitutional right to be present at all stages of his or her trial. *Reed*, 65 Mont. at 58, 210 P. at 758; *State v. Musgrove* (1978), 178 Mont. 162, 170, 582 P.2d 1246, 1251. Accordingly, Kennedy asserts that the District Court violated his constitutional right to be present when it excluded him from its conversation with Clark.

¶20 This Court addressed situations involving a defendant's absence during proceedings between the court and members of the jury in *State v. Tapson* and *State v. Bird*. In *Tapson*, Floyd Tapson was charged with sexual intercourse without consent, aggravated kidnapping and attempted deliberate homicide. *Tapson*, ¶ 6. At the conclusion of Tapson's trial, the District Court Judge entered the jury room during deliberations in order to deliver substitute verdict forms to the jury. Neither counsel nor Tapson were present during the Judge's conversation with the jury, and no record was made of the conversation. *Tapson*, ¶¶ 10-11. After eleven minutes, the District Court Judge returned to the courtroom and the jury resumed their deliberations. *Tapson*, ¶ 11. Tapson was ultimately convicted of attempted deliberate homicide. *Tapson*, ¶ 12.

¶21 Tapson appealed his conviction, alleging that the District Court's actions violated his constitutional right to be present during the critical stages of his trial. *Tapson*, ¶ 4. We examined Tapson's claim, and noted that: "Tapson's counsel was not present in the jury room with the judge and no court reporter attended the meeting to record what occurred." *Tapson*, ¶ 22.

¶22 We also noted that:

> No one informed Tapson that the Judge's intrusion into the jury room implicated two of Tapson's fundamental rights - the right to personally appear at all criminal proceedings and the right to a public trial. While Tapson's counsel professed to waive these rights, there is nothing in the record to indicate that Tapson himself was appraised of these rights, nor is there anything in the record indicating that he personally made a knowing, intelligent and voluntary waiver of these rights. On the contrary, the judge explained that he was going to personally enter the jury room with the new verdict forms and instruct the jury because it was the easiest way to handle this process. Tapson could not have been fully informed when the option to proceed in private or in open court was only presented as a matter of convenience.

*Tapson*, ¶ 27. Therefore, we concluded that the District Court violated Tapson's constitutional rights to a public trial and to be present at all critical stages of his trial when it excluded Tapson, his counsel, and a court reporter from its conversation with the jury panel. *Tapson*, ¶ 33.

¶23 In *Bird*, Paul Bird was charged with partner or family member assault. *Bird*, ¶ 10. Prior to trial, the District Court granted the State's motion to conduct individual *voir dire* of any prospective juror who had a personal experience with domestic violence. *Bird*, ¶ 12. The District Court then proceeded to conduct individual *voir dire* sessions with several of the prospective jurors in chambers. Bird was not present for these individual *voir dire* sessions. *Bird*, ¶¶ 12-14.

¶24 At least one of the prospective jurors questioned by the District Court remained on the final jury panel, and Bird was convicted of partner or family member assault. *Bird*, ¶¶ 14, 16, 21. Bird appealed his conviction, alleging that the District Court violated his constitutional right to appear when it excluded him from its in-chambers *voir dire* sessions.

*Bird*, ¶ 5. We analyzed Bird's claim and noted that:

> [T]he in-chambers *voir dire* was conducted specifically to elicit prospective
> jurors' personal feelings and experiences regarding domestic violence.
> Since [Bird] was excluded from the in-chambers *voir dire*, he never heard
> those prospective jurors [sic] responses. In particular, he did not have the
> opportunity to hear [a prospective juror] explain her biases in seeing repeat
> incidences of domestic violence. This prevented [Bird] from knowing
> about her prejudices and from insisting that defense counsel strike her with
> a peremptory challenge.

*Bird*, ¶ 28.

¶25 We further noted that:

> [N]either the trial court, the prosecutor, or defense counsel informed [Bird]
> that he had a constitutional right to be present during the individual
> questioning of the jurors. Nor did the court give [Bird] the opportunity to
> choose to participate in the individual *voir dire*. Therefore, not only did
> [Bird] not voluntarily, intelligently, and knowingly waive his right to be
> present, he was never afforded the opportunity to waive that right.

*Bird*, ¶ 37. Accordingly, we concluded that the District Court violated Bird's constitutional

right to be present at the critical stages of his trial when it excluded him from its in-chambers

*voir dire* sessions. *Bird*, ¶ 48.

¶26 While the instant case differs factually from *Bird* and *Tapson*, we note that, like the

defendants in *Bird* and *Tapson*, Kennedy was excluded from a critical stage of his trial.

Here, the State informed the court and the parties that a juror had been in telephone contact

with one of the detectives who was scheduled to testify at trial. Thus, there was no question

that a detective had crossed the line, and that a juror had ignored the court's admonishment

to refrain from outside contact with any other persons or witnesses. Nor was the contact

innocuous, as the conversation between Helderop and Clark related directly to the trial

11

proceedings. In short, the District Court was faced with the clear possibility that juror misconduct had occurred, which threatened to compromise the fairness of the entire proceeding.

¶27 Because an impartial jury is so fundamental to a defendant's right to receive a fair trial, the District Court's questioning of Clark was a critical stage of Kennedy's trial. See *State v. Eagan* (1978), 178 Mont. 67, 75, 582 P.2d 1195, 1200 (the right to a trial by an impartial jury is sacred in our system of jurisprudence); and *State v. LaMere*, 2000 MT 45, ¶ 50, 298 Mont. 358, ¶ 50, 2 P.3d 204, ¶ 50 (the impartiality of the jury goes to the very integrity of our justice system). Moreover, Kennedy's absence from the District Court's dialogue with Clark precluded Kennedy from questioning Clark about his conversation with Helderop, and from listening to and gauging Clark's responses. Therefore, we hold that the District Court violated Kennedy's constitutional right to be present at the critical stages of his trial when it excluded him from its conversation with juror Mike Clark.

¶28 On appeal, the State contends that even if the District Court's questioning of Clark was a critical stage of Kennedy's trial, defense counsel waived Kennedy's presence at such questioning because he failed to object to the questioning before it occurred. The State relies upon *State v. LaDue*, 2001 MT 47, ¶ 28, 304 Mont. 288, ¶ 28, 20 P.3d 775, ¶ 28, in which we stated that: "[A]n objection concerning jurisdictional or constitutional matters must be raised before the trial court . . . and if the objection is not made it will not be heard on appeal."

¶29 We noted in *Bird*, however, that before a defendant can waive a fundamental right,

12

"such waiver, to be recognized by the courts, must be informed and intelligent for there can be no waiver by one who does not know his rights or what he is waiving." *Bird*, ¶ 36 (citation omitted). To that end, we concluded that:

> [A] trial court must explain to the defendant, on the record, the defendant's constitutional right to be present at all critical stages of the trial . . . and that if a defendant chooses to waive that right, the court must obtain an on-the-record personal waiver by the defendant acknowledging that the defendant voluntarily, intelligently and knowingly waives that right.

*Bird*, ¶ 38, see also *Tapson*, ¶ 28.

¶30    In the instant case, the District Court failed to inform Kennedy that he had a constitutional right to be present during its questioning of juror Mike Clark. The District Court also neglected to inform Kennedy that such questioning was about to occur. Therefore, not only did Kennedy not voluntarily, intelligently and knowingly waive his right to be present, he was never told that his right existed and was about to be compromised by the District Court's plan to question Clark outside of his presence. See also *Bird*, ¶ 37. Accordingly, any "waiver" made by defense counsel on behalf of Kennedy was ineffective.

¶31    We also note that while the State correctly points out that *Bird* and *Tapson* were decided after Kennedy's trial, this fact is immaterial to our resolution of this issue. That is, *Bird* and *Tapson* were not cases of first impression in Montana. Our decisions in *Bird* and *Tapson* were premised upon settled Montana law and a criminal defendant's firmly established constitutional right to be present at all critical stages of his or her trial. Our decisions in *Bird* and *Tapson* did not change the law, they simply reaffirmed it. Thus, there is no retroactive application of a newly announced principle of law at work in the instant

13

case.

¶32    Significantly, the State argues that even if the District Court violated Kennedy's constitutional right to be present at the critical stages of his trial, such violation was harmless, because Kennedy did not suffer any prejudice.  In *Tapson*, we analyzed a similar argument made by the State and noted that: "Although the most important factor here is the actual intrusion of the Judge into the jury room during deliberations, the lack of a record 'makes it impossible to say that, beyond a reasonable doubt, there was no prejudice to the defendant, and therefore harmless error.'" *Tapson*, ¶ 31.  Consequently, we determined that because a deficit in the record made it impossible to conclude that the defendant did not suffer prejudice, the District Court's entry into the jury room constituted reversible error. *Tapson*, ¶¶ 30-33.

¶33    In this case, however, the record is not ambiguous as to the District Court's conversation with Mike Clark.  Moreover, the corrective actions taken by the District Court-- immediate removal of Clark from the jury panel, his replacement with the alternate juror, and the exclusion of Helderop as a witness--are a matter of record as well.  Thus, unlike the situation in *Tapson*, the District Court's actions arising out of the Clark/Helderop situation can be readily assessed for prejudice.

¶34    That said, we conclude that Kennedy was not prejudiced by his exclusion from the District Court's conversation with Clark.  That is, following its conversation with Clark, the District Court immediately excused Clark from jury service.  Clark subsequently left the courtroom, without speaking to any of the other jurors, and was replaced, pursuant to § 46-

14

16-118, MCA (1999), by the alternate juror. Moreover, Trevor Helderop, the witness with whom Clark had spoken, did not testify at Kennedy's trial. Therefore, while Kennedy's exclusion from the District Court's conversation with Clark violated his constitutional right to be present at the critical stages of his trial, such exclusion did not cause Kennedy prejudice because any opportunity Kennedy missed to question Clark about his conversation with Helderop was mooted when Clark was removed from the jury panel and Helderop was excluded as a witness.

¶35 As we noted above, when reviewing a district court's determination of whether to grant a motion for a mistrial, we look to whether the defendant has been denied a fair and impartial trial. *Herrman*, ¶ 36. We conclude that the District Court erred in excluding Kennedy from its conversation with Clark. However, in light of the ensuing corrective actions taken by the court, we hold that the error did not ultimately deprive Kennedy of a fair and impartial trial. Accordingly, the District Court did not abuse its discretion in denying Kennedy's motion for a mistrial.

## ISSUE 2

¶36 Did Mike Clark's conversation with Detective Helderop constitute juror misconduct?

¶37 On appeal, Kennedy alleges that Mike Clark's conversation with Detective Helderop constituted juror misconduct. In light of the fact that Clark ignored the District Court's repeated admonitions and called Helderop on the phone mid-trial, the answer to this question seems self-evident. However, as we have already concluded that Kennedy was not deprived of a fair trial as a result of the District Court's handling of the Clark/Helderop situation, we

need not spend time debating and deciding this question. As such, we decline to reach this issue.

¶38    For the forgoing reasons, the judgment of the District Court is affirmed.


                                        /S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ JOHN WARNER