DA 13-0515

FILED

October 21 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 279

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOSEPH ROBERTSON and
CARRI ROBERTSON,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Jefferson, Cause Nos. DC-2012-44 and DC-2012-45
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Jeanne M. Walker; Hagen & Walker, PLLC; Billings, Montana
(for Joseph D. Robertson)

            Jennifer A. Hurley; Hurley Kujawa PLLC; Butte, Montana
(for Carri Robertson)

      For Appellee:

            Timothy C. Fox, Montana Attorney General; Micheal S. Wellenstein,
Assistant Attorney General; Helena, Montana

            Mathew J. Johnson, Jefferson County Attorney; Boulder, Montana

                               Submitted on Briefs:  September 3, 2014
                                        Decided:  October 21, 2014

Filed:

_____
                 Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Carri and Joseph Robertson separately appeal their convictions for criminal trespass and theft.  We restate the issues on appeal as follows:

¶2     *1.     Whether the State presented sufficient evidence to convict the Robertsons of trespass and theft.*

¶3     *2.     Whether the Court should review issues that the Robertsons did not raise with the District Court.*

¶4     *3.     Whether the written judgments conform to the oral pronouncement of sentences.*

¶5     We affirm the theft convictions, vacate the trespass convictions, and remand the written judgments to the District Court for amendment.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6     The Robertsons were members of the Basin Volunteer Fire Department (BVFD) for most of 2011.  Issues arose within the BVFD and, on December 28, 2011, the BVFD Board of Trustees (Board) mailed a letter to the Robertsons stating, "[Y]our membership with the [BVFD] is being placed in suspension status."  The letter explained that the suspension was "put in place by the [Board] of the BVFD as per the by-laws adopted July 2011."  The letter also informed the Robertsons that "[d]uring suspension status you are not allowed to enter any property owned by the BVFD . . . ."

¶7     By January 14, 2012, the Robertsons had received and read their suspension letters.  While driving that day, they encountered a disabled vehicle pulled off alongside the interstate.  The Robertsons offered to help the driver.  Carri called the Jefferson County Sheriff's Office and told the dispatcher that they were going to deploy cones and

2

flares. The Robertsons then went to the BVFD fire hall, using their member access codes to enter. While there, the Robertsons took two fire jackets from the unassigned inventory, as well as two cones and some flares. Carri called BVFD President Dema Rhodes and left a message advising her that they were taking cones and flares from the fire hall to help a disabled vehicle. Carri did not mention the jackets.

¶8 The Robertsons returned to the disabled vehicle and placed the cones and flares on the highway. A passing truck ran over and destroyed one of the cones. After they finished their assistance, the Robertsons went back to the fire hall. They returned the intact cone but not the jackets, and took a handful of additional flares. Carri called Rhodes again, leaving a message that the Robertsons returned the cones.

¶9 Later, on the fire hall's surveillance video, Rhodes saw that the Robertsons had taken and not returned the two jackets. Eventually, a warrant was issued for the Robertsons' arrest, after which the Robertsons turned themselves in and returned the jackets.

¶10 The State charged the Robertsons with trespass for entry into the fire hall and with theft of the cones, flares, and jackets. Trial began on April 3, 2013, before a jury in the Fifth Judicial District Court. The Robertsons were jointly represented.

¶11 After voir dire but before the venire panel returned to the courtroom for final selection, the judge held a conference with the parties in the courtroom. Defense counsel informed the judge that there were prosecution witnesses in the courtroom's foyer speaking to prospective jurors. The judge then went out into the hallway to investigate.

Upon returning, the judge reported that the bailiff was keeping the potential jurors separate from the witnesses, and that all witnesses and other persons in the hallway denied speaking with any members of the jury pool. Defense counsel did not object or request the opportunity to question either the prospective jurors or the people in the hallway about any contact between them, and the proceedings continued.

¶12 The trial lasted two days. At the end of the second day, the parties submitted the case to the jury for deliberations. The jury deliberated for approximately fifty minutes before the judge reconvened the parties and the jury. The jury reported that it had more deliberating to do before it could reach a verdict. The judge disclosed that he had a long drive ahead of him that evening and that he would not be able to return to oversee the rest of the deliberations until April 17. The judge and parties then spoke off the record. Going back on the record, the judge said that the court would reconvene in nearly three weeks, on April 24, for the jury to continue deliberating. Neither party objected to this plan.

¶13 On April 24, 2013, the court reconvened for further deliberations. The jury deliberated for approximately two hours before returning guilty verdicts.

¶14 At the sentencing hearing, the court asked whether the parties had any objections to the restitution affidavit for the cost of the trial. The restitution affidavit disclosed that three members of the jury pool who did not serve on the jury had addresses outside Jefferson County. Neither party raised any concerns about the out-of-county addresses. The court sentenced each of the Robertsons to consecutive six-month jail terms and $500

4

fines on each count, all suspended.  The court also imposed restitution to the BVFD plus all costs of the jury trial.

¶15    The Robertsons separately appeal their convictions.

## STANDARD OF REVIEW

¶16    We generally decline to consider issues raised for the first time on appeal.  *State v. Torres*, 2013 MT 101, ¶ 37, 369 Mont. 516, 299 P.3d 804.  Regardless of whether it was raised below, however, we review de novo a claim of insufficiency of the evidence.  *State v. Criswell*, 2013 MT 177, ¶ 13, 370 Mont. 511, 305 P.3d 760.  We view the evidence in the light most favorable to the prosecution and ask whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *Criswell*, ¶ 13.

## DISCUSSION

¶17    *1.  Whether the State presented sufficient evidence to convict the Robertsons of trespass and theft.*

¶18    The Robertsons each were convicted of trespass and theft, and each now appeals those convictions on the ground of insufficient evidence.

   *A.  Trespass*

¶19    Trespass to property has three elements: (1) a "person knowingly," (2) "enters or remains unlawfully in," (3) an "occupied structure" or "the premises of another."  Section 45-6-203(1)(a)-(b), MCA.  "A person enters or remains unlawfully . . . when the person is not licensed, invited, or otherwise privileged . . . ."  Section 45-6-201(1), MCA.

5

Privilege to enter "may be revoked at any time by personal communication of notice by the landowner or other authorized person . . . ." Section 45-6-201(1), MCA.

¶20 The Robertsons both argue that, as BVFD members, they were privileged to enter the fire hall, which means their entry was lawful under § 45-6-201(1), MCA. They claim that no "authorized person" revoked that privilege before they entered the fire hall on January 14, 2012. Section 45-6-201(1), MCA.

¶21 The State does not dispute that BVFD members ordinarily are privileged to enter the fire hall. The State argues that the Board was authorized to revoke the Robertsons' privilege to enter the fire hall, and did revoke that privilege through the suspension letter. The suspension letter specifically informed the Robertsons that they were "not allowed to enter any property owned by the BVFD . . . ."

¶22 Montana permits fire district boards of trustees to "govern[ ] and manage[ ]" fire districts. Section 7-33-2104, MCA. Trustees accordingly have powers to "prepare and adopt suitable by-laws" and "provide adequate and standard firefighting and emergency response apparatus, equipment, personnel, housing, and facilities." Section 7-33-2105, MCA. The Board's suspension letter, admitted into evidence, informed the Robertsons their "suspension [was] put in place by the Board of Trustees of the BVFD as per the by-laws adopted July 2011." The State submitted into evidence the July 2011 BVFD "Constitution and By-Laws." The document provides, "Any adult citizen, who resides in Basin or who owns real property in the fire district or who lives in an area adjacent to the [BVFD], can be a member of the [BVFD]." The document also provides, "Any member

6

may be removed from the [BVFD], for cause, by two-thirds vote of the active membership. Such cause for removal will be put in writing by the Chief or the Trustees and kept on record with the Fire Department."

¶23 BVFD Trustee Greg Hughes testified that the by-laws authorized the Board to suspend members. He located the authorization in the by-laws' reference to "such calls [sic] for removal" and testified "I would consider the word 'calls [sic] for removal' to be part of a suspension." He admitted, however, that no "direct words" provided the Board authority to suspend BVFD members. BVFD President Rhodes, meanwhile, testified that the Board lacks the power to remove a person from the ranks of BVFD members or to exclude members from the fire hall.

¶24 Viewing the evidence in a light most favorable to the prosecution, we conclude that the State failed to offer sufficient evidence that the Robertsons unlawfully entered the fire hall. The Robertsons were members of the BVFD. Like other members, they had the code needed to enter the fire hall.

¶25 There is insufficient evidence to establish that the Board was authorized to revoke the Robertsons of their privilege to enter the fire hall. At trial, the State did not dispute that the Board derives its authority from the July 2011 by-laws. The BVFD by-laws do not authorize the Board to suspend BVFD members. In fact, the by-laws are altogether silent on the suspension of BVFD members. The by-laws specify that the removal of a BVFD member requires "a two-thirds vote of active membership." But the Robertsons' suspension was not executed through a "two-thirds vote of active membership." As the

7

suspension letter makes clear, the suspension was "put in place by the Board of Trustees." Although the by-laws require the Trustees or the Chief to record "such cause for removal" after it has occurred by a vote of BVFD members, that clause does not grant the Board the power to suspend members before a removal vote.

¶26 The State argues that it is irrelevant whether the Board has the power to suspend because the Board also informed the Robertsons in the letter that they were "not allowed to enter any property owned by the BVFD . . . ." This argument suffers two flaws. First, the suspension letter predicated the removal of the Robertsons' privilege to enter BVFD property on the Robertsons' suspension. The entire pertinent portion of the letter reads, "*During suspension status* you are not allowed to enter any property owned by the BVFD [emphasis supplied] . . . ." If the Board lacked the power to suspend, then there was no "suspension status" during which the Robertsons were not allowed to enter BVFD property.

¶27 Second, the State points to nothing in the by-laws that provides the Board the authority to ban a BVFD member from entering the fire hall. Without a suspension clause, there is nothing in the by-laws to support the Board's claimed authority to revoke a BVFD member's permission to enter BVFD property.

¶28 As a matter of law, in the absence of authority, the Board could not revoke the Robertsons' normal privileges to enter the fire hall. We thus vacate the Robertsons' respective trespass convictions.

*B. Theft*

¶29 A person commits theft when he or she purposely or knowingly obtains or exerts unauthorized control over property of another with the purpose of depriving the other person of that property. Section 45-6-301(1), MCA.

¶30 Drawing all reasonable inferences in favor of the prosecution, we conclude that the State presented sufficient evidence to sustain the Robertsons' respective theft convictions. Unlike entering the fire hall, which BVFD members were privileged to do, the State's evidence suggested that individual firefighters were not privileged to take jackets from the inventory without special permission. Rhodes testified that jackets in the inventory were for new firefighters without jackets of their own. The Robertsons had their own jackets in their assigned lockers. Moreover, the State presented sufficient evidence that the Robertsons possessed the requisite state of mind for a theft offense. Unlike other items they took, the Robertsons did not report taking the jackets. And unlike a cone they took, the Robertsons did not return the jackets until a sheriff's deputy confronted them. A reasonable juror could conclude from these facts that the Robertsons exercised unauthorized control over the jackets with the intent to purposely deprive the BVFD of them.

¶31 *2. Whether the Court should review the issues that the Robertsons did not raise with the District Court.*

¶32 We generally will not review the merits of an issue that an appellant fails to preserve through a timely objection at trial. *Torres*, ¶ 37; *see* § 46-20-104(2), MCA. Although we retain our common law power to review unpreserved issues under the plain

error doctrine, we exercise that power only when an appellant convinces us that (1) "the claimed error implicates a fundamental right," and (2) "the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process." *Torres*, ¶ 37.

¶33 On appeal, Joseph raises whether it was proper for the District Court to adjourn jury deliberations for three weeks and whether the procedures used to select his jury pool complied with statutory requirements. Carri raises whether her right to presence was violated by the District Court judge speaking to witnesses outside her presence. On all these issues, we find the Robertsons' failures to object fatal to their claims.

*A. Adjournment in Jury Deliberations*

¶34 Joseph challenges the propriety of the adjournment in jury deliberations. The Robertsons failed to object either before or immediately following the adjournment. After the jury reconvened, deliberated, and delivered its verdicts, however, the Robertsons moved for a "mistrial" based on the adjournment—a motion that the District Court summarily denied.[1]

¶35 A motion for a new trial does not serve as a replacement for a timely objection. *State v. Ugalde*, 2013 MT 308, ¶ 59, 372 Mont. 234, 311 P.3d 772. Joseph did not object

---

[1] Although to both the District Court and this Court Joseph referred to his motion as a motion for mistrial, it is more properly considered a motion for a new trial because it came "[f]ollowing a verdict or finding of guilty." Section 46-16-702, MCA. We thus will refer to it as a motion for a new trial in this opinion.

10

when the District Court determined that there would be a three-week adjournment in deliberations and does not request plain error review. We decline to consider this issue.

### B. Right to Presence

¶36 Carri argues that the judge's inquiry into whether there was contact between witnesses and jurors violated her right to be present at a critical stage of her trial because the judge's inquiry took place in the hallway while she remained in the courtroom. Although she did not object to the inquiry at the time, she nonetheless insists that the Court now review the merits of the issue.

¶37 The Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee a criminal defendant the right to be present at all critical stages of her trial. *State v. Matt*, 2008 MT 444, ¶¶ 16-17, 347 Mont. 530, 199 P.3d 244. A critical stage is "any step of the proceeding where there is a potential for substantial prejudice to the defendant." *Matt*, ¶ 17.

¶38 Carri's exclusion from the judge's brief inquiry did not inhibit her opportunity to register a contemporaneous objection. The supposed critical stage occurred right outside the courtroom where Carri was present. Carri was present but did not object when the judge said "I'm going out in the hallway." Carri also was present but did not object immediately after the inquiry when the judge reported what he had learned.

¶39 Carri argues that the claim is properly before the Court because there was no "contemporaneous, personal, knowing, voluntary, intelligent and on-the-record waiver" of her right to be present. *State v. Tapson*, 2001 MT 292, ¶ 32, 307 Mont. 428, 41 P.3d

11

305. Earlier this year, we clarified how we analyze appeals on unpreserved right to presence claims. In *State v. Reim*, 2014 MT 108, 374 Mont. 487, 323 P.3d 880, the Court addressed a defendant's claimed violation of his right to presence by noting that "in the absence of a timely objection in the trial court, the defendant must obtain review of a right to presence claim under one of the established methods, such as plain error review or an ineffective assistance of counsel claim." *Reim*, ¶ 40.

¶40 Although Carri requests plain error review, she has not met her burden to "firmly convince" the Court that her exclusion compromised the justness, fairness, or integrity of her trial. *Torres*, at ¶ 37. Carri compares her right to presence claim to other right to presence claims that the Court has elected to review in the past, but the comparison is unconvincing. Both in *Tapson* and in *State v. Kennedy*, 2004 MT 53, 320 Mont. 161, 85 P.3d 1279, the trial judge, without the defendant present, spoke with members of the jury directly—in *Tapson*, in the jury room while the jury was deliberating, and in *Kennedy*, privately with a juror about a "clear possibility [of] juror misconduct." *Tapson*, ¶ 11; *Kennedy*, ¶ 26.

¶41 By contrast, the contact here was the judge's brief foray into the hallway to inquire whether the witnesses had spoken to any of the prospective jurors during the break. The judge immediately returned and reported on the record what had occurred. Carri was present with counsel and the jury had not yet been sworn. She had the opportunity to object at that time and to make a record. As we noted in *Reim*, our prior decisions did not create a blanket rule that "all right of presence claims [are exempt] from the general rule

12

that a constitutional violation must be first presented to the trial court." *Reim*, ¶ 40. Under these circumstances, we decline to exercise plain error review.

### C. *Substantial Compliance with Jury Pool Procedures*

¶42 A criminal defendant's right to trial by an impartial jury includes the right to a jury pool that represents a fair cross-section of the community. *State v. LaMere*, 2000 MT 45, ¶ 36, 298 Mont. 358, 2 P.3d 204. Certain procedures must be followed to ensure that the fair cross-section requirement is met. *LaMere*, ¶ 38; *see* §§ 3-15-301, -402 to -404, MCA.

¶43 Joseph claims that there was a "substantial failure" to comply with the mandated procedures in the procurement of his jury pool. *LaMere*, ¶ 55. Specifically, he points out that the State's restitution affidavit disclosed that three persons who participated in the jury pool had traveled from addresses outside Jefferson County and thus presumably were not Jefferson County residents. Although none of these three individuals ended up serving on the jury, and Joseph did not have to use any of his peremptory challenges on them, Joseph claims that their participation in the jury pool violated his rights because it evinced a substantial failure to comply with jury pool procurement procedures.

¶44 Joseph failed to register an objection on this issue during the jury selection process. On appeal, he points out that nothing in the record shows that he knew that these three individuals were from outside the county. To the contrary, Joseph argues that he received a notice from the District Court on March 21, 2013, that thirty-five

13

prospective jurors had been randomly selected "pursuant to" Montana's jury selection procedures.

¶45 At the beginning of voir dire, however, Joseph's counsel "stipulate[d]" that the "veneer [sic] panel [was] properly summoned, properly selected, and [had] an appropriate number of persons . . . ." Moreover, the record does reveal that Joseph was put on notice of this issue during the sentencing phase, but raised no concern when presented with the restitution affidavit.

¶46 To preserve an issue for appeal, an appellant must object "as soon as the grounds for the objection become apparent." *State v. Grace*, 2001 MT 22, ¶ 35, 304 Mont. 144, 18 P.3d 1008. While Joseph argues that there is nothing in the record to show conclusively that he knew about the addresses of the three jurors at the voir dire stage, Joseph nonetheless should have known at this stage. Under Uniform District Court Rule 9, the jury questionnaires were available to counsel, and Joseph's counsel stipulated that the jury pool was properly summoned and selected.

¶47 We are not convinced that the inclusion of these three jurors in the jury pool resulted in "a manifest miscarriage of justice, left unsettled the question of the fundamental fairness of the trial or proceedings, or compromised the integrity of the judicial process." *Torres*, ¶ 37. None of the individuals actually served on the jury that tried the case. None therefore played a role in convicting Joseph. Moreover, Joseph did not have to use any of his preemptory challenges on any of these three individuals. Thus, we do not find the circumstances appropriate for plain error review.

14

¶48    *3.    Whether the written judgments conform to the oral pronouncement of sentences.*

¶49    The Robertsons own their own fire company and engage in fire suppression by contract. At sentencing, the Robertsons pointed out that they may be called upon to assist the BVFD in fire suppression. The District Court ordered the Robertsons to stay out of the fire hall, but said that it "intends by the absence of comment to make no order about [the Robertsons'] firefighting activities." At the sentencing hearing, the court imposed no restriction on the Robertsons' abilities to interact with law enforcement. When the written judgment was entered, however, it included a condition that the Robertsons "must report any contact with law enforcement to the County Attorney within 48 hours."

¶50    The record shows that the Robertsons were not "afforded the opportunity to respond to [this] condition's inclusion upon sufficient notice at sentencing." *State v. Goff*, 2011 MT 6, ¶ 31, 359 Mont. 107, 247 P.3d 715. Therefore, the question is whether the condition "substantively increase[s] the [Robertsons'] loss of liberty or property." *Goff*, ¶ 31. The State argues that it does not, and promises to not predicate probation revocation proceedings on the Robertsons' failure to report contact with law enforcement during emergency situations.

¶51    Notwithstanding the State's pledge on appeal, the written judgment requires any contact with law enforcement to be reported. The Robertsons will almost certainly come into frequent contact with law enforcement while engaging in their business activities. Requiring them to report those contacts within forty-eight hours or potentially face

revocation constitutes a substantial interference with their livelihood, and, by extension, their liberty and property. We thus conclude that this clause should not stand.

**CONCLUSION**

¶52 We affirm the Robertsons' convictions for theft. Because the State presented insufficient evidence to convict the Robertsons of trespass, we vacate their trespass convictions. We remand the case to the District Court with instructions to conform the written judgments to the oral pronouncement of the sentences.

/S/ BETH BAKER

We concur:

/S/ PATRICIA COTTER
/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT