FILED

07/11/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0466

DA 21-0466

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 131

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

RYAN HUNTER ZITNIK,

      Defendant and Appellant.


APPEAL FROM:     District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 20-308
Honorable Mike McMahon, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Jeff N. Wilson, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

          Kevin Downs, Lewis and Clark County Attorney, Fallon Stanton, Deputy County Attorney, Helena, Montana


Submitted on Briefs:  May 24, 2023

Decided:   July 11, 2023


Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Ryan Hunter Zitnik (Zitnik) appeals his convictions and sentence entered in the First Judicial District Court, Lewis and Clark County, for negligent vehicular assault, § 45-5-205, MCA; resisting arrest, § 45-7-301, MCA; and disorderly conduct, § 45-8-101(1)(a)(iii), MCA. Zitnik argues the District Court erred when it communicated with the jury during deliberations while neither counselor nor Zitnik were present. Zitnik maintains he was denied his right to be present at critical stages of his trial and his right to a public trial.[1]

¶2 We reverse and restate the issue on appeal:

*Did the District Court commit reversible error by responding to the jury's questions about the definition and timing of "arrest" without first consulting the defendant and counsel on the record?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On January 12, 2020, around midnight, Tara Yancy (Yancy) heard a loud bang in a field near her home on the west side of Helena. She saw that a vehicle had crashed and went out to see if anyone needed help. Yancy found an unconscious male in the driver seat with blood on his forehead and a female on the passenger side of the floorboard slumped over and bleeding. Yancy shook the man and asked his name. He identified himself as Ryan Zitnik and complained of pain along his sternum. Yancy called emergency services. Officer Domingo Leveque-Zapata responded to the accident and observed Zitnik had facial

---

[1] We decline to address Zitnik's argument regarding his right to a public trial because the violation of his right to be present at critical stages of his trial is dispositive.

injuries. He also noticed Zitnik's breath had a strong odor of alcohol and that his eyes were bloodshot and watery. When questioned by the officers, Zitnik responded it was none of the officers' business to know how much Zitnik had to drink. Rather, Zitnik was focused on the passenger's well-being. Officer Jay Lopez arrived and transported Zitnik to the hospital. During transport, he informed Zitnik he was under arrest for driving under the influence of alcohol (DUI). Meanwhile, an ambulance transported the passenger, Rachel Combs (Combs), to the hospital.

¶4 While at the hospital, the officers continued their investigation of Zitnik for DUI. Officer Lopez read Zitnik two alcohol screening test advisories. Zitnik refused to provide a blood sample. Officer Lopez told Zitnik again he was under arrest for DUI but did not handcuff Zitnik so that medical staff could continue to provide Zitnik with care. Instead, Officer Zapata monitored Zitnik while standing outside his hospital room, situated between Zitnik's room and the emergency room (ER) where Combs was being treated. Officer Lopez, in turn, sought a search warrant for Zitnik's blood sample.

¶5 A nurse tending to Zitnik's injuries noted his anxiety and concern for Combs's well-being. Zitnik repeatedly inquired if he could see Combs to check on her. Zitnik heard Combs crying in pain from the other side of the nurses' station. He ran out of his room towards her room. Officer Zapata followed Zitnik, calling out his name, and tackled Zitnik to the ground telling him to "get down." Officer Zapata told him "[y]ou're not gonna interfere with what [the hospital staff is] doing." A hospital staffer held down Zitnik while Officer Zapata placed Zitnik's arms behind his back and handcuffed his wrists. Zitnik

3

cried, "Stop. Please. I didn't do anything. I'm just trying to see [Combs]." Officer Zapata restrained Zitnik to keep him from interfering with Combs's medical care. Hospital staff and Officer Zapata dragged Zitnik back to his hospital room while Zitnik continued to fight and yell expletives, prompting hospital staff to chemically "subdue" Zitnik. Once subdued, Officer Lopez removed Zitnik's handcuffs so he could receive medical care.

¶6 Dr. Kelly Dewey treated both Zitnik and Combs in the ER. Dr. Dewey noted both were agitated and resistant to hospital staff. Zitnik's blood alcohol concentration (BAC) when he was admitted to the hospital was 0.271.[2] Dr. Dewey believed Zitnik had received "a good hit to the nose" during the accident. He considered Combs's aggressive and irrational behavior might be related to her head trauma since agitated behavior can be caused by bleeding and pressure in the head. Combs suffered injuries to her face and mouth, including a broken nose, a broken facial bone, and a lost tooth.

¶7 At the conclusion of the evidence, the jury was instructed on the offense of resisting arrest and the relevant required mental state:

> A person commits the offense of resisting arrest if the person knowingly prevents or attempts to prevent a peace officer from effecting an arrest by using or threatening to use physical force or violence against the peace officer or another, or using any other means that creates a risk of causing physical injury to the peace officer or another.
>
> To convict the Defendant of the offense of resisting arrest, the State must prove the following elements:
>
> 1. That the Defendant prevented or attempted to prevent a peace officer from effecting an arrest;

---

[2] A blood sample taken pursuant to a search warrant the following morning showed Zitnik's BAC as 0.195.

2. By using or threatening to use physical force or violence against the peace officer or another, or using any other means that creates a risk of causing physical injury to the peace officer or another; AND

3. That the Defendant acted knowingly. If you find from your consideration of the evidence that all of these elements have been proved beyond a reasonable doubt, then you should find the Defendant guilty.

    If, on the other hand, you find from your consideration of the evidence that any of these elements has not been proved beyond a reasonable doubt then you should find the Defendant not guilty.

    For purposes of Count II—Resisting Arrest and Count III—Disorderly Conduct, a person acts knowingly when the person is aware of his or her conduct.

Further, the court instructed the jury, "you must apply the evidence presented in the case in order to reach a verdict [and that] [t]hese instructions are intended to cover all necessary laws which are pertinent to the case."

¶8      In closing, the State argued Zitnik "attempt[ed] to avoid arrest or restraint" by bracing his legs and refusing to go back to his hospital room. Zitnik, in turn, argued his conduct at the hospital was not criminal but arose out of concern for Combs. During deliberations, the jury sent two written questions to the court: "What is the definition of arrest? At what point was the defendant 'under arrest' originally?" The District Court responded to the jury's questions in writing: "All of the relevant law is set forth in the instruction[s]. You will need to apply [the] instructions as given to you." No record was made of this exchange between the court and deliberating jury, except the written question and the court's written response subsequently placed by the clerk of court in the court file.

5

The record does not reflect any consultation with counsel and the defendant, and the record does not establish that counsel and Zitnik were present when the jury submitted their questions and the court responded. The jury returned its verdict finding Zitnik guilty of all three counts.

¶9 Two days after the trial concluded, the clerk of court docketed a piece of paper with the handwritten note from the jury containing the two questions and the District Court's written response advising the jury to apply the instructions as given. The District Court imposed a sentence of five years, with three years suspended, and a fine of $2,500 for the negligent vehicular assault; a six month suspended concurrent term for resisting arrest; and a $75 fine for disorderly conduct. The alleged presence violation pertains to a communication involving only the charge of resisting arrest and does not involve Zitnik's convictions for negligent vehicular assault or disorderly conduct. Zitnik appeals.

**STANDARD OF REVIEW**

¶10 Whether a criminal defendant's constitutional rights were violated, including a criminal defendant's right to be present at critical stages of trial, is a question of constitutional law over which this Court exercises plenary review. *State v. Sinz*, 2021 MT 163, ¶ 20, 404 Mont. 498, 490 P.3d 97; *Becker v. State*, 2010 MT 93, ¶ 8, 356 Mont. 161, 232 P.3d 376.

¶11 This Court can exercise plain error review when a defendant failed to object to his right to be present at the district court. *State v. Robertson*, 2014 MT 279, ¶ 39, 376 Mont. 471, 336 P.3d 367. We invoke the plain error doctrine on a case-by-case basis and only

6

when an appellant convinces us that failing to review the error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process. *State v. Reim,* 2014 MT 108, ¶ 38, 374 Mont. 487, 323 P.3d 880.

**DISCUSSION**

¶12 Before addressing the substance of the issue raised, we must determine our standard of review. Zitnik did not make an objection to the court's handling of the jury's questions because neither he, his counsel, or the State were aware that the jury, while deliberating, presented two questions to the court which the court answered without consulting the parties. The general rule is that an objection concerning a constitutional matter must be raised before the trial court, and if the objection is not made, it will not be reviewed on appeal. *Reim*, ¶ 38. This Court's common law power of plain error review is an exception to that rule. To exercise plain error review, the defendant must show (1) that the claimed error implicates a fundamental right and (2) firmly convince this Court that failure to review the error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process. *Reim*, ¶ 38.

¶13 We have, on occasion, reached the merits of an alleged presence violation without applying a strict plain error analysis. *See State v. Tapson*, 2001 MT 292, ¶ 14, 307 Mont. 428, 41 P.3d 305 (review was appropriate where Tapson's counsel professed to waive Tapson's right to be present but there was nothing in the record indicating Tapson himself

7

knew of his right to be present or waived that right); *State v. Bird*, 2002 MT 2, ¶¶ 37-38, 308 Mont. 75, 43 P.3d 266 (we rejected an argument that a defendant had waived his presence claim during voir dire because the record did not establish that he was ever informed of his right to be present and that he waived that right); *State v. Kennedy*, 2004 MT 53, ¶¶ 28-30, 320 Mont. 161, 85 P.3d 1279 (review was appropriate where the defendant was never informed of his right to be present during an in-chamber conversation the court had with a juror); *State v. Wilson*, 2013 MT 70, ¶ 12, 369 Mont. 282, 297 P.3d 1208 (this Court did not consider whether Wilson had preserved his presence claim). Nonetheless, our decision to reach the merits of an alleged presence violation on occasion should not be considered as excepting all presence violations from the requirement that they first be raised at trial. Here, however, the standards for exercising plain error review are easily satisfied. First, Zitnik's fundamental right to be present was implicated when a substantive question of law was communicated between the court and deliberating jury in his absence. Second, the lack of any record indicating the court consulted with the parties and Zitnik prior to responding to the jury's questions convinces us that failure to review the alleged presence violation would leave unsettled the question of the fundamental fairness of the proceedings, compromise the integrity of the judicial process, and result in a manifest miscarriage of justice. Accordingly, we will exercise plain error review to consider Zitnik's alleged presence violation.

¶14　　The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to be present at all critical stages of the proceedings against him. U.S.

Const. amend. VI; *Illinois v. Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 1058 (1970). The Due Process Clause of the Fourteenth Amendment also protects a defendant's right to be present. *United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 1484 (1985); *State v. Matt*, 2008 MT 444, ¶ 16, 347 Mont. 530, 199 P.3d 244 (overruled on other grounds by *State v. Charlie*, 2010 MT 195, 357 Mont. 355, 239 P.3d 934). "A defendant has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Matt*, ¶ 14 (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667 (1987)). By being physically present, a defendant can hear and see the proceedings and can participate in the presentation and preservation of his rights. *Matt*, ¶ 16. The right to be present during all proceedings serves to safeguard the public interest in a fair and orderly judicial system. *Tapson*, ¶ 14.

¶15 To determine whether the right to be present has been violated, we analyze: (1) whether the alleged violation occurred at a "critical stage" of the proceedings; (2) whether the defendant had validly waived the right to be present; and (3) whether any violation of the right to be present was harmless error. *Reim*, ¶ 36 (citing *Matt*, ¶ 18; *Wilson*, ¶ 12).

¶16 First, we address whether Zitnik's alleged violation of his right to be present occurred at a "critical stage" of the proceedings. A critical stage is "any step of the proceeding where there is a potential for substantial prejudice to the defendant." *Ranta v. State*, 1998 MT 95, ¶ 17, 288 Mont. 391, 958 P.2d 670. The State, relying on *Sinz*, argues we need not definitively determine if an event constituted a critical stage when the

9

defendant was not prejudiced by his absence from that event. The State maintains that the court's interaction with the jury was memorialized in the note and that Zitnik was not prejudiced because the jury was merely instructed to follow the instructions previously given. However, the questions indicate the jury was considering when Zitnik was first placed under arrest and what constituted an arrest—both of which were integral to the particular facts of the case, the elements of the resisting arrest charge, and to Zitnik's defense. Had Zitnik known of the jury's questions he may have advocated for a different response from the court. We therefore must consider the potential for prejudice arising from the absence of both counsel and Zitnik during a point at trial where the jury made a substantive inquiry about the law pertaining to the charge of resisting arrest in the context of the facts of this case. Accordingly, we reject the State's argument that, because Zitnik was not substantially prejudiced, it is unnecessary to determine whether the event constituted a critical stage of the proceedings.

¶17 Pursuant to § 46-16-503(2), MCA, Zitnik has both a constitutional and statutory right to be present when the District Court communicated with the jury. Montana has codified the way courts address inquiries from a deliberating jury:

> After the jury has retired for deliberation, if there is any disagreement among the jurors as to the testimony or if the jurors desire to be informed on any point of law arising in the cause, they shall notify the officer appointed to keep them together, who shall then notify the court. The information requested may be given, in the discretion of the court, *after consultation with the parties.*

Section 46-16-503(2), MCA, (2019) (emphasis added). Based on the plain and unambiguous language of the statute, the court was statutorily required to first consult with Zitnik before responding to the jury's questions.

¶18 Our precedent explains the principles underlying § 46-16-503(2), MCA. In *Tapson*, the judge brought substitute verdict forms into the jury room at the suggestion of the State and without opposition from defense counsel. *Tapson*, ¶ 11. Neither counsel nor the defendant were present. *Tapson*, ¶ 11. The judge returned to the courtroom eleven minutes later and never made a record of the meeting. *Tapson*, ¶ 11. On appeal, we held the judge's intrusion into the jury room implicated the fundamental right to personally appear at all criminal proceedings. *Tapson*, ¶ 27. We determined it was reversible error for the judge to have entered the jury room while the jury was present, without the presence of the defendant or counsel, and without an on-the-record waiver by the defendant of his rights to be present at a critical stage of the trial. *Tapson*, ¶ 39. "No communication, whatever, should take place between the judge and the jury after the cause has been submitted to them, unless in open court with all the parties and their attorneys present." *Tapson*, ¶ 17 (citation omitted).

¶19 In *Matt*, the trial judge, prosecutor, and defense counsel met in chambers to discuss evidentiary issues. *Matt*, ¶ 6. Defense counsel indicated to the judge that she did not mind if the defendant was absent during the meeting because the defendant would not understand the proceedings. *Matt*, ¶ 6. On review following the defendant's conviction, we held that the in-chambers conference was a critical stage of the trial because the judge considered

11

and ruled upon evidentiary issues raised by the defense, which implicated the defendant's rights, and the defendant did not waive his right to be present. *Matt*, ¶ 16. We stated, "[a] defendant has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Matt*, ¶ 16 (quoting *Stincer*, 482 U.S. at 745, 107 S. Ct. at 2667).

¶20 In *Charlie*, defense counsel and the State conferred with the trial judge by telephone without Charlie (who was incarcerated at the time and not immediately available) and discussed a newly discovered videotape in relation to his upcoming trial. *Charlie*, ¶ 7. A week later, the judge informed Charlie what had transpired at the telephonic conference and the reason for delaying his trial to enhance the video. *Charlie*, ¶ 7. On appeal, Charlie argued he was entitled to be present at the telephonic conference and that his exclusion from the conference so contaminated the framework of the trial that he was denied his right to a fundamentally fair trial. This Court explained, "the question presented is whether there is a 'reasonable possibility' that Charlie's absence from the telephonic conference caused him prejudice." *Charlie*, ¶ 41. We held, because the parties present at the telephonic conference discussed the impact of newly discovered evidence, Charlie's presence at that conference "had a reasonably substantial relation to his right to defend against the charges" and concluded this "was a critical stage of the criminal proceedings against him." *Charlie*, ¶ 41.

¶21 In *State v. Northcutt*, 2015 MT 267, 381 Mont. 81, 358 P.3d 179, the presiding judge approached the jury room and inquired whether the jury would reach a verdict that night.

*Northcutt*, ¶ 3. Neither Northcutt, his counsel, the court reporter, nor prosecutor were present when the court made this communication to the jury. *Northcutt*, ¶ 3. Relying on *Tapson* and *Matt*, we concluded "[a] communication between a judge and a deliberating jury . . . holds the potential to substantially prejudice a defendant," thereby constituting a critical stage of the proceedings. *Northcutt*, ¶¶ 16-17. "Introducing an interaction with the judge into [] sensitive stage[s] of the proceedings is pregnant with possibilities for error." *Northcutt*, ¶ 16 (citing *Tapson*, ¶ 18) (quoting *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 460, 98 S. Ct. 2864, 2885). Moreover, we reasoned, "a defendant's right to be present may keep judges from engaging in such highly discouraged interactions in the first place, safeguarding the public's interest in a fair and orderly judicial system." *Northcutt*, ¶ 16 (quoting *Matt*, ¶ 16) (internal quotations omitted). Since Northcutt was not present or aware of the communication between the trial judge and jury that occurred during a critical stage of the trial, we held his right to presence was violated. *Northcutt*, ¶ 17.

¶22 Our precedent is consistent with federal precedent requiring a defendant's presence when a jury retires for deliberation and presents questions to the court. As early as 1919, the United States Supreme Court recognized, "[w]here a jury has retired to consider its verdict, and supplementary instructions are required, either because asked for by the jury or for other reasons, they ought to be given either in the presence of counsel or after notice and an opportunity to be present; and written instructions ought not to be sent to the jury without notice to counsel and an opportunity to object." *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 80–81, 39 S. Ct. 435, 436 (1919). Notifying the parties after the court

provided supplementary instructions is wrong as a matter of law. *Fillippon*, 250 U.S. at 82, 39 S. Ct. at 437. The orderly conduct of a jury trial requires parties to attend all proceedings from the time the jury is impaneled until it is discharged after rendering a verdict, so that the right to be heard is protected. *Fillippon*, 250 U.S. at 81, 39 S. Ct. at 436.

¶23　In *Rogers v. United States*, 422 U.S. 35, 95 S. Ct. 2091 (1975), the deliberating jury sent a note to the court asking whether it could accept a guilty verdict that also recommended extreme mercy. *Rogers*, 422 U.S. at 38, 95 S. Ct. at 2094. Without notifying the defendant, the court responded by written message. *Rogers*, 422 U.S. at 36, 95 S. Ct. at 2093. As here, the defendant's counsel did not know about the communication until after the Supreme Court granted certiorari. *Rogers*, 422 U.S. at 41, 95 S. Ct. at 2095. The Court concluded the jury's communication was "tantamount to a request for further instructions" and ruled that the communication made in the defendant's absence violated a defendant's right to be present at every critical stage of the trial. *Rogers*, 422 U.S. at 39, 41, 95 S. Ct. at 2094-95. The Court explained "the jury's message should have been answered in open court and [] petitioner's counsel should have been given an opportunity to be heard before the trial judge responded." *Rogers*, 422 U.S. at 39, 95 S. Ct. at 2094.

¶24　Finally, in *Gypsum*, which has been previously relied upon by this Court (*Northcutt*, ¶16; *Tapson*, ¶¶ 18-20) counsel agreed to allow the judge to privately discuss with the jury whether lengthy deliberations had impacted jurors' physical condition. *Gypsum*, 438 U.S. at 431-32, 98 S. Ct. at 2870 (1978). The agreement included assurances that no instructions

14

on the law would be delivered unless the parties were present in open court. *Gypsum*, 438 U.S. at 431-32, 98 S. Ct. at 2870. Nonetheless, the judge and foreman's discussions extended beyond the physical condition of the jurors. *Gypsum*, 438 U.S. at 432-33, 98 S. Ct. at 2871. The court summarized the conversation for the parties on the record. *Gypsum*, 438 U.S. at 432, 98 S. Ct. at 2871. Defense counsel requested to see a transcript of the exchange and asked for a mistrial. *Gypsum*, 438 U.S. at 433, 98 S. Ct. at 2872. The court denied both requests and the jury subsequently returned a guilty verdict. *Gypsum*, 438 U.S. at 433, 98 S. Ct. at 2871. The Court found the meeting between the judge and foreman to be "pregnant with possibilities for error" which warranted reversal because it was impossible to gauge how the meeting impacted the jury's verdict. *Gypsum*, 438 U.S. at 460-62, 98 S. Ct. at 2885-86.

¶25 We conclude Zitnik's absence when the court addressed the jury's questions occurred at a critical stage of his trial because there was "a potential for substantial prejudice." *Matt*, ¶ 17. The jury sought the legal definition of "arrest" and wanted to know when Zitnik was initially "under arrest." Had Zitnik been present, he could have provided an alternative definition than what the court gave, such as the statutory definition of "arrest" or other language for "arrest" derived from case law on which the jury had not previously been instructed. *See* § 46-1-202(3) ("arrest" means taking a person into custody in the manner authorized by law); *State v. Ellington*, 2006 MT 219, ¶¶ 12, 14, 333 Mont. 411, 143 P.3d 119 (arrest involves: "(1) the authority to arrest, (2) the assertion of that authority to effect an arrest, and (3) the restraint of the person arrested"); *State v. Van Dort*, 2003

MT 104, ¶ 14, 315 Mont. 303, 68 P.3d 728 ("arrest has been accorded a broad definition, which applies if 'a reasonable person, innocent of any crime, would have felt free to walk away under the circumstances'"). Therefore, the District Court erred when it did not give Zitnik an opportunity—because Zitnik was not even aware of the jury's question—to argue that a response more tailored to the facts should be given; from objecting to the response that was given and making a record; from proposing an argument in support of a different response; or from making further motions at a critical stage of the proceedings against him. These were not questions about what was for dinner; rather, they were substantive questions about the law pertaining to the particular facts of this case. Since Zitnik had no opportunity to address the jury's substantive questions about the definition of "arrest" and when it occurred, the error is reversible unless Zitnik waived his right to be present or the error was harmless.

¶26    We therefore turn to the second consideration of an alleged presence violation: whether Zitnik waived his right to be present. Waiver is defined as the voluntary abandonment of a known right. *Tapson*, ¶ 24. The fundamental right to appear and defend may only be waived by failing to appear at trial, or through an informed, intelligent, and recorded waiver. *State v. Mann*, 2006 MT 160, ¶ 12, 332 Mont. 476, 139 P.3d 159. Any waiver of one's constitutional rights must be made specifically, voluntarily, and knowingly. *Bird*, ¶ 35. We will not presume a defendant has waived fundamental rights. *Bird*, ¶ 35. Only the defendant retains the ability to waive their right to be present. *Matt*, ¶ 26. If a defendant chooses to waive his right to be present at a critical stage of the trial,

16

the court must obtain an on-the-record personal waiver by the defendant acknowledging the defendant voluntarily, intelligently, and knowingly waives that right. *Bird*, ¶ 38.

¶27 Here, Zitnik was unaware the jury had questions and did not know he had the right to be consulted prior to the court responding. Zitnik first learned about the jury's questions following his conviction when his appeal was being prepared. Based on this record, or lack thereof, it is clear Zitnik never waived his right to be present.

¶28 Finally, we consider whether the prejudice against Zitnik resulted in harmless error. We have previously held that the absence of a defendant and counsel when a deliberating jury makes an inquiry of the court does not constitute structural error but should be considered under the harmless error analysis. *Charlie*, ¶ 41. Under harmless error analysis, "it shall be incumbent on the State to demonstrate that there is no reasonable possibility that the violation prejudiced the defendant; in other words, the State will carry the burden of *persuading* the Court, based upon the record before us and given the interests the right of presence was designed to protect, that the violation was harmless." *Charlie*, ¶ 45 (emphasis in original).

¶29 The State argues we should rely on *Sinz* where we concluded that because there was a record of the court's interaction with the jury, as both the jury's inquiry and the court's response were in writing, we were able to "determine whether Sinz was prejudiced" by the trial court's actions. *Sinz*, ¶ 40. The State argues that because the District Court communicated with the jury through written notes contained in the record, there is no reasonable possibility that the District Court's actions prejudiced Zitnik. However, while

we may know the jury's questions and the court's response, this ignores the substantial prejudice that inured from Zitnik's absence. Had Zitnik been present, he could have proposed an instruction on the statutory definition of arrest, § 46-1-202(3), MCA, or a definition contained in our precedent (*see Ellington*, ¶¶ 12, 14, *Van Dort*, ¶ 14); or proposed a response more tailored to the jury's substantive question about the law and facts of these proceedings. He was foreclosed from objecting to the response that was given and making a record, and from proposing an argument in support of a different response; and he was foreclosed from making any further motions he deemed appropriate at a critical stage of the proceedings against him. Thus, the facts in *Sinz* do not inform our inquiry here.

¶30 The State also relies on *State v.Godfrey, 2009 MT 60, 349 Mont. 335, 203 P.3d 834*. In *Godfrey*, the court met with the parties six times to answer ten jury questions and answered one of the questions without consulting the parties. *Godfrey*, ¶ 27. We noted, concluding that Godfrey was not prejudiced, the court's actions had "no bearing upon the evidence" and were "consistent with the court's original charge to the jury." *Godfrey*, ¶¶ 35-36. The State contends we should apply the same reasoning because the District Court's written response directed the jury to apply the instructions as already given and did not give any incorrect statements of law. We decline the State's invitation. Here, while the District Court's response directed the jury to the instructions originally given, it did not meaningfully address the jury's legitimate and substantive questions of law relating to the facts of this case. Zitnik had to be under "arrest" to be convicted of resisting arrest. Zitnik

18

and the parties should have been allowed to consult with the court, make recommendations and requests, and make a record of their objections. It may have been that ultimately the court would have delivered the same response, but the right of presence contemplates a defendant has the opportunity to be involved in his defense. To foreclose meaningful mechanisms imbedded in established procedures of trial designed to ensure the trial's fairness, which are protected and enhanced through advocacy, was error. We conclude the error was not harmless.

## CONCLUSION

¶31     When the District Court responded to the questions from the deliberating jury outside Zitnik's presence, it was during a critical stage of the proceedings and constituted reversible error. Zitnik did not waive his right to be present and the District Court's error was not harmless because the quality of the questions involved substantive areas of the law that could impact the jury's decision to convict. Zitnik had no opportunity to object, propose alternative responses, or otherwise make a record for appeal. Accordingly, the error was not harmless.

¶32     As the communication was confined to Zitnik's charge of resisting arrest, the reversible error relates only to his conviction for that offense. Accordingly, Zitnik's conviction for resisting arrest is reversed.


/S/ LAURIE McKINNON


19

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR