FILED

06/24/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0461

DA 23-0461

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 132

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DONALD EDWARD FOSTER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 21-625
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Scotti L. Ramberg, Peace Law Group, LLC, Missoula, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

          Scott Twito, Yellowstone County Attorney, Jacob Yerger, Deputy
County Attorney, Billings, Montana

          Submitted on Briefs:  April 23, 2025

          Decided:  June 24, 2025

Filed:

                    _____
                              Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 Donald Edward Foster ("Foster") appeals his convictions from the Montana Thirteenth Judicial District Court, Yellowstone County, raising issues related to ineffective assistance of counsel, statutory prohibitions on multiple charges, and due process rights regarding his absence from a critical stage of proceedings. We address the following restated issues:

1. *Whether Foster's counsel was ineffective for not objecting to multiple charges of aggravated sexual intercourse without consent.*

2. *Whether Foster's exclusion from in-chambers discussion regarding newly discovered evidence warrants plain error review.*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On the evening of May 2, 2021, continuing into the early morning of May 3, 2021, Judy Foster ("Judy"), Foster's adoptive mother, was awakened by a disturbance involving Foster and M.W., an 18-year-old acquaintance who had come to stay temporarily at Judy's residence. Judy discovered Foster holding a knife, threatening her and M.W. Foster forcibly restrained both women, binding their hands and taking them from the upstairs bedrooms to the basement. Foster then isolated Judy in a downstairs bathroom, threatening harm if she interfered or attempted escape.

¶3 Foster subsequently directed M.W. into a separate basement bedroom. Here, Foster committed the first charged act: oral penetration of M.W. without her consent (Count I). Following this separate, distinct act, Foster repositioned M.W. and attempted vaginal penetration, an act distinct both temporally and physically (Count IV). After this

2

unsuccessful attempt, Foster committed another distinct and successful act of anal penetration (Count II).

¶4 Foster and M.W. then returned upstairs to Judy's bedroom, separate from the basement acts. After a period of threats and conversation, Foster again forcibly penetrated M.W. anally (Count III). Following this second anal penetration, Foster committed another distinct act—again unsuccessfully attempting vaginal penetration (Count V).

¶5 Throughout these events, Foster continually made explicit threats of violence to both Judy and M.W., brandishing weapons, including a handgun and knife. His threats included references to harming or killing them if they resisted or sought assistance. Eventually, after several hours, M.W. persuaded Foster to leave the residence with her, surrendering to law enforcement outside the home.

¶6 On May 4, 2021, the State charged Foster with multiple offenses stemming from the incidents occurring from the evening of May 2, 2021, through the early morning of May 3, 2021. Following amendments, the Third Amended Information alleged:

- Count I: Aggravated sexual intercourse without consent—oral penetration;
- Count II: Aggravated sexual intercourse without consent—anal penetration (first instance);
- Count III: Aggravated sexual intercourse without consent—anal penetration (second instance);
- Count IV: Attempted sexual intercourse without consent—attempted vaginal penetration (first instance);
- Count V: Attempted sexual intercourse without consent—attempted vaginal penetration (second instance);
- Count VI: Aggravated kidnapping—Judy Foster;
- Count VII: Aggravated kidnapping—M.W.

3

¶7 Prior to trial, during jury selection on August 26, 2022, the State informed the District Court it had received a letter from Foster's cellmate alleging Foster made incriminating admissions. Foster was not present during the initial in-chambers discussion of this new evidence due to counsel's concerns for his safety at the detention facility. Foster's counsel moved to exclude the new witness or, alternatively, to continue the trial to allow sufficient investigation. The District Court granted the continuance. Subsequently, the District Court confirmed the continuance to allow adequate investigation of the newly discovered evidence, a decision Foster explicitly ratified after immediate consultation with counsel. Ultimately, the State did not present this evidence at trial.

¶8 At trial, the State presented evidence detailing Foster's actions during the incident but no evidence of Foster's cellmate's allegations of Foster's incriminating admissions. The jury convicted Foster on all counts.

¶9 Foster appeals, arguing ineffective assistance of counsel (IAC), violation of Montana's statutory prohibition against multiple charges arising from the same transaction, and violation of his due process right to be present during a critical stage of the proceeding.

## STANDARD OF REVIEW

¶10 We review claims of ineffective assistance of counsel de novo. *State v. Bryson*, 2024 MT 315, ¶ 23, 419 Mont. 490, 560 P.3d 1270. When determining whether counsel was ineffective, we rely on the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), which requires "a showing of deficient performance and resulting prejudice." *State v. Parker*, 2025 MT 92, ¶ 10, 421 Mont. 473, ___ P.3d ___. Determinations regarding statutory prohibitions on multiple charges, including double

4

jeopardy protections under § 46-11-410, MCA, are questions of law reviewed for correctness. *State v. Geren*, 2012 MT 307, ¶ 24, 367 Mont. 437, 291 P.3d 1144. We invoke plain error review of unpreserved claims of error sparingly and only under extraordinary circumstances. *State v. George*, 2020 MT 56, ¶¶ 4-5, 399 Mont. 173, 459 P.3d 854. We exercise plenary review over questions involving constitutional law, including a criminal defendant's right to be present at critical stages of trial. *State v. Zitnik*, 2023 MT 131, ¶ 10, 413 Mont. 11, 532 P.3d 477.

## DISCUSSION

¶11   *1. Whether Foster's counsel was ineffective for not objecting to multiple charges of aggravated sexual intercourse without consent.*

¶12   Foster first contends his counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), for failing to object to multiple convictions he argues violate Montana's statutory prohibition against prosecuting multiple offenses arising from a single transaction, or lesser-included offenses under § 46-11-410, MCA. Specifically, Foster asserts Counts IV and V (attempted vaginal penetration – first and second instances) were lesser-included offenses of Counts II and III (aggravated anal penetration – first and second instances) and Count I (oral penetration) was part of the same transaction as Counts II (aggravated anal penetration – first instance) and III (aggravated anal penetration – second instance).

¶13   Section 46-11-410, MCA, provides "when the same transaction may establish the commission of more than one offense, a person charged with the conduct may be prosecuted for each offense." Each offense may be prosecuted separately, however, unless

it falls under one of the statute's enumerated exceptions. *State v. Valenzuela*, 2021 MT 244, ¶ 17, 405 Mont. 409, 495 P.3d 1061; § 46-11-410, MCA. Under § 46-11-410(2)(a), MCA, a defendant may not be convicted of more than one offense if one offense is included in the other. An offense is "included" if established by proof of the same or fewer facts than required to establish the charged offense. Section 46-1-202(9)(a)-(b), MCA. As we have noted previously, "separate transactions can arise from criminal conduct occurring at the same place with the same victim." *Geren*, ¶ 47 (citing *State v. Williams*, 2010 MT 58, ¶ 20, 355 Mont. 354, 228 P.3d 1127). Relevant here is the first exception under subsection (2)(a) of the statute, which prohibits prosecution of multiple offenses when "one offense is included in the other." Section 46-11-410(2)(a), MCA. Foster's argument relies heavily on the assertion that all sexual assaults constituted one continuous transaction.

¶14     We disagree. Montana law defines "sexual intercourse" as:

> penetration of the vulva, anus, or mouth of one person by the penis of another person, penetration of the vulva or anus of one person by a body member of another person, or penetration of the vulva or anus of one person by a foreign instrument or object manipulated by another person to knowingly or purposely:
>     (i) cause bodily injury or humiliate, harass, or degrade; or
>     (ii) arouse or gratify the sexual response or desire of either party.

Section 45-2-101(68)(a), MCA.[1] For purposes of sexual intercourse without consent, "any sexual penetration, however slight," is sufficient. Section 45-2-101(68)(b), MCA.

¶15     The record, here, demonstrates distinct acts of slight penetration of body parts listed in § 45-2-101(68)(a), MCA, separated by time, location, and specific intent, sufficient to

---

[1] It seems the terms being described here should be "sexual intercourse without consent" rather than just "sexual intercourse."

justify separate charges. Specifically, trial testimony established the oral penetration (Count I) occurred distinctly in the basement bedroom prior to any attempted vaginal or anal penetrations; each unsuccessful attempted vaginal penetration (Counts IV and V) involved separate and unsuccessful efforts occurring in different locations and moments than the anal penetrations (Counts II and III), each clearly differentiated by intervening events and victim responses. Each charge required proof of distinct acts, locations, and victim responses. *See Geren*, ¶¶ 44-50 (affirming convictions for incest and attempted incest because the first transaction involving the step-daughter occurred when the defendant forced his hand inside her shirt and fondled her breast (incest); and the second transaction involving the same victim occurred when, sometime later, the defendant grabbed her, kissed her, and asked her to engage in oral sex or vaginal intercourse with him (attempted incest)). Under § 46-11-410, MCA, and consistent with our decision in *Geren,* the factual and evidentiary distinctions make clear each conviction represented separate and independent criminal acts. Just as different sexual acts occurring in close temporal and spatial proximity requiring separate factual proofs[2] in *Geren* were properly charged, each charge Foster faced involved separate conduct, requiring distinct evidentiary proof.

¶16 Under the two-prong test of *Strickland,* Foster must prove that (1) his counsel's performance was deficient, falling below an objectively reasonable standard; and (2) prejudice resulted, meaning a reasonable probability exists that the outcome would have

---

[2] *See State v. Weatherell*, 2010 MT 37, ¶¶ 11-13, 355 Mont. 230, 225 P.3d 1256 (double jeopardy did not bar conviction for assault on a minor of defendant who pleaded guilty to partner family member assault ("PFMA") for the same circumstances because assault on a minor requires proof that the victim was a minor, which PFMA does not).

7

differed absent counsel's errors. A successful ineffective assistance of counsel claim requires the defendant to show counsel's deficient performance and prejudice from that deficiency. *State v. Howard*, 2011 MT 246, ¶ 20, 362 Mont. 196, 265 P.3d 606. "We need not address both prongs where one is dispositive." *Parker*, ¶ 20. Foster's counsel was not deficient for not objecting under § 46-11-410, MCA, because no valid objection existed. Foster therefore has failed to meet his burden of proving the first prong of the *Strickland* test to establish ineffective assistance of counsel.

¶17　　2. *Whether Foster's exclusion from in-chambers discussion regarding newly discovered evidence warrants plain error review.*

¶18　　Foster also argues his absence from the initial in-chambers discussion of the newly discovered letter of incriminating admissions from his cellmate violated his due process right to be present at a critical stage of proceedings, constituting structural or harmful error. However, Foster did not preserve this claim below. Unpreserved claims of error are analyzed sparingly under the plain error doctrine on a case-by-case basis, under consideration of the "totality of the circumstances of each case." *George*, ¶ 5. To exercise plain error review, a party must "firmly convince" this Court that "the claimed error implicates a fundamental right and that such review is necessary to prevent a manifest miscarriage of justice or that failure to review the claim may leave unsettled the question of fundamental fairness of the proceedings or may compromise the integrity of the judicial process." *George*, ¶ 5 (internal citations omitted). On occasion, we have reached the merits of an alleged presence violation without applying a strict plain error analysis. *Zitnik*, ¶ 13. Nonetheless, in Foster's case, we will apply plain error review and determine that (1) the

alleged error concerns a fundamental right because the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24, of the Montana Constitution guarantee a criminal defendant the right to be present at all critical stages of the proceedings;[3] and (2) declining to review the alleged error would leave unsettled a question of the fundamental fairness of the proceedings, compromise the integrity of the judicial process, and result in a manifest miscarriage of justice. *George*, ¶ 5.

¶19 To determine whether a defendant's right to be present has been violated, we consider whether (1) the alleged violation occurred at a "critical stage" of the proceedings, (2) the defendant validly waived the right to be present, and (3) whether a violation of the right to be present was harmless error. *Zitnik,* ¶15.

¶20 Critical stages of proceedings include any step where there is potential for substantial prejudice to the defendant. *State v. Charlie,* 2010 MT 195, ¶ 40, 357 Mont. 355, 239 P.3d 934. We have previously concluded that the discussion of newly discovered evidence requires a defendant's presence because it carries a "reasonably substantial relation" to the defendant's right to defend against pending charges. *Charlie,* ¶ 41 (Charlie's absence from a telephone conference including his counsel, the prosecutor, and the trial judge to discuss the impact of a newly discovered videotape related to his upcoming trial, which resulted in continuance of his trial, a decision the court conveyed to Charlie a week later, was a critical stage of the criminal proceedings against him). As in *Charlie*, the in-chambers meeting to discuss Foster's cellmate's letter reporting that Foster

---

[3] *Zitnik*, ¶ 14.

made incriminating admissions resulting in continuance of the trial was a critical stage, requiring Foster's presence.

¶21 Generally, a defendant may waive a fundamental right, such as the right to be present at all stages of a criminal proceeding, only if the waiver is informed, intelligent, and recorded. *State v. Mann*, 2006 MT 160, ¶ 12, 332 Mont. 476, 139 P.3d 159; *State v. Kennedy*, 2004 MT 53, ¶ 29, 320 Mont. 161, 85 P.3d 1279. A waiver of constitutional rights must be specific, voluntary, and knowing. *State v. Bird*, 2002 MT 2, ¶ 35, 308 Mont. 75, 43 P.3d 266. For a waiver to be valid, we have held that "a trial court must explain to the defendant, on the record, the defendant's constitutional right to be present at all critical stages of the trial" and upon the defendant's waiver, "the court must obtain an on-the-record personal waiver by the defendant acknowledging that the defendant voluntarily, intelligently, and knowingly waives the right." *Bird*, ¶ 38. Here, Foster was not informed of the in-chambers meeting before it occurred. Therefore, Foster did not voluntarily, intelligently, or knowingly waive his right to be present.

¶22 Finally, we consider whether Foster's exclusion from the pre-jury empanelment in-chambers discussion of the newly discovered evidence, excluding him but including his attorney, was harmless error. *See Charlie,* ¶ 41 (we held that a defendant's absence from a conference discussing newly discovered evidence is not structural in nature but rather warranted harmless error analysis). In support of his argument, Foster cites *Bird* (a defendant has a constitutional right to be present at every critical stage of the proceeding, and violation of this right at a critical stage is generally considered a structural error requiring reversal without a harmless-error analysis), and *Zitnik*, (exclusion of a defendant

10

from a critical procedural stage generally constitutes prejudicial error unless the State proves the error was harmless, but not all absences are structural errors—some are harmless if shown to have no significant prejudicial impact). Both cases are distinguishable.

¶23 Although *Bird* supports a defendant's constitutional right to be physically present at every critical stage, Bird's scenario was that he was excluded from jury selection—an indisputably critical stage—the absence from which Bird had no subsequent opportunity to consent or cure. Unlike Bird who had to proceed to trial with a jury selected in his absence, Foster was immediately informed following the in-chambers, pre-empanelment conference and explicitly agreed to the decision to exclude his cellmate as a witness or continue the trial to allow further investigation. *Bird* did not address the effect of subsequent consent and acquiescence. In addition, to Foster's being immediately informed of the in-chambers discussions before the jury was empaneled, the State ultimately did not offer the newly discovered evidence discussed in chambers at trial against Foster.

¶24 During jury deliberations on Zitnik's charges of negligent vehicular assault, resisting arrest, and disorderly conduct, the court communicated with the jury, responding to a juror's questions regarding the resisting arrest count (the timing and definition of "arrest")—without Zitnik or his counsel present. We reversed Zitnik's resisting arrest conviction, determining that the court's ex parte response to the jury's inquiry was structural error—not harmless—because it occurred during a pivotal moment in the criminal trial; Zitnik had not waived his right to be present; and the court's unilateral clarification on the charge, without input from Zitnik or his counsel, deprived Zitnik of the opportunity to object or propose alternative language. The exclusion of Zitnik from the

11

response to the jury question had the potential to impact the jury's decision to convict on the resisting arrest count. *Zitnik*, ¶ 25 (citing *State v. Matt*, 2008 MT 444, ¶ 17, 347 Mont. 530, 199 P.3d 244 (overruled on other grounds by *Charlie*)). Here, Foster learned of the in-chambers meeting immediately afterward from his attorney who participated in the meeting; and the meeting occurred before the jury was empaneled. The resulting continuance of Foster's trial allowed him to conduct further investigation to be prepared for trial.

¶25 Foster attempts to distinguish *Charlie*, in which we held that a defendant's subsequent ratification of decisions made in his absence after being fully informed generally renders the absence harmless because the defendant knowingly waived the objection. In *Charlie*, we addressed a criminal defendant's constitutional right to be present during all critical stages of trial. *Charlie* involved a situation in which newly discovered evidence (a video of Charlie's arrest) emerged shortly before trial, prompting a teleconference between the trial judge and counsel without Charlie's participation. The court ruled that this ex parte communication, which discussed evidentiary matters affecting trial strategy and timing, constituted a critical stage because it significantly impacted Charlie's ability to defend himself. Although the court found that this meeting was a critical stage, it did not find the error structural. Instead, the court applied a harmless error analysis, ultimately concluding that the error was harmless because Charlie was later informed and ratified the decisions, made in his absence, to vacate and reset his trial date to allow the parties time to assess the new evidence and prepare appropriately.

¶26     Foster argues that his ratification of the District Court's decision to delay swearing the jury to avoid double jeopardy and allow investigation of newly discovered evidence of his cellmate's incriminating letter is different than Charlie's explicit approval of decisions to vacate and reset the trial date to allow the parties to review the newly discovered evidence of the video of his arrest. There is no difference. The error in excluding Foster from the in-chambers meeting is as harmless as excluding Charlie from the teleconference because Foster, like Charlie, was immediately informed post-discussion and ratified the resulting decisions.

¶27     Here, the record shows Foster's counsel strategically protected Foster's safety initially and promptly informed him afterward, at which point Foster explicitly consented to the continuance decision. When Foster joined the proceedings, he affirmed the necessity of the continuance, thereby ratifying any initial absence. Importantly, the State never presented the newly discovered cellmate's evidence at trial, rendering any potential prejudice speculative. Foster contends his absence constituted structural error, but we disagree. Structural errors generally implicate fundamental rights where harm cannot be quantified. Unlike structural errors identified in *Bird*, Foster's absence involved no fundamental impairment of rights because he was promptly consulted and explicitly ratified all procedural decisions. Thus, applying the harmless error analysis articulated in *Charlie*, we conclude that Foster's absence from the in-chambers meeting was harmless beyond a reasonable doubt.

¶28     Foster also argues that the decision to delay jury empanelment violated his fundamental double jeopardy protections. This argument fails. In Montana, jeopardy

13

attaches "when the jury is impaneled and sworn." *State v. Carney*, 219 Mont. 412, 417, 714 P.2d 532, 535 (1986); *see also City of Billings ex rel. v. Billings Mun. Ct.*, 2017 MT 261, ¶ 18, 389 Mont. 158, 404 P.3d 709. Here, the strategic decision—promptly ratified by Foster—to delay empanelment to allow the defense adequate opportunity to investigate the critical newly discovered evidence preserved trial fairness and did not implicate double jeopardy concerns. Because the jury had not been sworn at the time of the continuance, and Foster expressly consented to the delay after consultation with counsel, no double jeopardy violation occurred.

## CONCLUSION

¶29 We affirm Foster's convictions. Foster's ineffective assistance of counsel claim fails as his counsel's performance was neither deficient nor prejudicial. Additionally, Foster's statutory claims under § 46-11-410, MCA, fail because each conviction represented distinct offenses supported by separate acts and evidence. Finally, Foster's brief absence from the initial in-chambers conference, under the specific circumstances presented, does not constitute structural or harmful error requiring reversal.

¶30 Affirmed.

/S/ KATHERINE M BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

14